Christopher Kao (SBN 237716)
  ckao@velaw.com
Brock S. Weber (SBN 261383)
  bweber@velaw.com
Vinson & Elkins L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA  94105
Tel:   415.979.6900
Fax:   415.651.8786

Christine Yang (SBN 102048)
  cyang@sjclawpc.com
Law Office of S.J. Christine Yang
17220 Newhope Street, Suite 101-102
Fountain Valley, CA  92708
Tel.:   714.641.4022
Fax:   714.641.2082

*Attorneys for Defendant
Kingston Technology Company, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLARIS INNOVATIONS LIMITED,<br><br>                     Plaintiff,<br><br>        vs.<br><br>KINGSTON TECHNOLOGY COMPANY, INC.,<br><br>                     Defendant. | Case No.  8:16-cv-00300-CJC-RAO<br><br>**KINGSTON TECHNOLOGY COMPANY, INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** |

Defendant Kingston Technology Company, Inc. ("Kingston"), by and through undersigned counsel, hereby files its First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff Polaris Innovations Limited's ("Polaris") Complaint as follows:

## FIRST AMENDED ANSWER TO COMPLAINT

### JURISDICTION

1.     Kingston admits the Complaint purports to state a cause of action for patent infringement arising under Title 35 of the United States Code.  Kingston denies it has infringed the patents-in-suit.  Kingston admits that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1331 & 1338(a).  Except as expressly admitted, any remaining allegations of Paragraph 1 are denied.

2.     Paragraph 2 states legal conclusions to which no response is required. Kingston does not contest that personal jurisdiction exists over Kingston for purposes of this action only.  Kingston denies it has committed acts of patent infringement, including  making,  selling,  offering  to  sell,  directly  or  through  intermediaries, subsidiaries  and/or  agents,  infringing  products  within  this  district,  including  to customers in this district.  Except as expressly admitted, any remaining allegations of Paragraph 2 are denied.

### VENUE

3.     Paragraph 3 states legal conclusions to which no response is required. Kingston admits it is headquartered in Fountain Valley, California.  Any remaining allegations of Paragraph 3 are denied.

### THE PARTIES

4.     Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies them.

5.     Kingston admits it is a corporation organized and existing under the laws of Delaware with its principal place of business at 17600 Newhope Street, Fountain Valley, California 92708.  Any remaining allegations of Paragraph 5 are denied.

### NATURE OF THE ACTION

6.     Paragraph 6 states legal conclusions to which no response is required. Kingston denies it has committed unauthorized, willful, or infringing manufacture,

use, sale, offering for sale, and/or importation of products and methods incorporating Polaris's patented inventions. Any remaining allegations of Paragraph 6 are denied.

7. Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and therefore denies them.

8. Paragraph 8 states legal conclusions to which no response is required. Kingston denies that it makes, sells, offers for sale, or imports products and methods that infringe the Asserted Patents. Any remaining allegations of Paragraph 8 are denied.

## THE ASSERTED PATENTS

9. Kingston admits that what purports to be a copy of the United States Patent No. 6,157,589 ("the '589 Patent") is attached to the Complaint as Exhibit 1 and that the face of the '589 Patent bears the title "Dynamic semiconductor memory device and method for initializing a dynamic semiconductor memory device." Any remaining allegations of Paragraph 9 are denied.

10. Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 and therefore denies them.

11. Kingston admits that what purports to be a copy of the United States Patent No. 6,438,057 B1 ("the '057 Patent") is attached to the Complaint as Exhibit 2 and that the face of the '057 Patent bears the title "DRAM refresh timing adjustment device, system and method." Any remaining allegations of Paragraph 11 are denied.

12. Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 and therefore denies them.

13. Kingston admits that what purports to be a copy of the United States Patent No. 6,850,414 B2 ("the '414 Patent") is attached to the Complaint as Exhibit 3 and that the face of the '414 Patent bears the title "Electronic printed circuit board having a plurality of identically designed housing-encapsulated semiconductor memories." Any remaining allegations of Paragraph 13 are denied.

14.    Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 and therefore denies them.

15.    Kingston admits that what purports to be a copy of the United States Patent No. 7,206,978 B2 ("the '978 Patent") is attached to the Complaint as Exhibit 4 and that the face of the '978 Patent bears the title "Error detection in a circuit module."  Any remaining allegations of Paragraph 15 are denied.

16.    Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 and therefore denies them.

17.    Kingston admits that what purports to be a copy of the United States Patent No. 7,315,454 B2 ("the '454 Patent") is attached to the Complaint as Exhibit 5 and that the face of the '454 Patent bears the title "Semiconductor memory module." Any remaining allegations of Paragraph 17 are denied.

18.    Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 and therefore denies them.

19.    Kingston admits that what purports to be a copy of the United States Patent No. 7,334,150 B2 ("the '150 Patent") is attached to the Complaint as Exhibit 6 and that the face of the '150 Patent bears the title "Memory module with a clock signal regeneration circuit and a register circuit for temporarily storing the incoming command and address signals."  Any remaining allegations of Paragraph 19 are denied.

20.    Kingston is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 and therefore denies them.

## COUNT I:

## KINGSTON'S PURPORTED INFRINGEMENT OF U.S. PATENT NO. 6,157,589

21.    Kingston incorporates by reference its responses to the allegations in Paragraphs 1-20 above as if fully set forth herein.

22. Paragraph 22 states legal conclusions to which no response is required. Kingston denies that it infringes, literally or under the doctrine of equivalents, the '589 Patent, and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 22 are denied.

23. Kingston admits that what purports to be an image of the front and back views of Kingston's SM2280S3/120G product is shown in Paragraph 23. Any remaining allegations of Paragraph 23 are denied.

24. Kingston admits that what purports to be a front image of Kingston's SM2280S3/120G product is shown in Paragraph 24. Kingston admits that the purported SM2280S3 product shown in Paragraph 24 includes a dynamic random access memory (DRAM) chip (labeled Nanya NT5CC128M16FP in the photo shown in Paragraph 24) and a controller chip (labeled Phison PS3108 in the photo shown in Paragraph 24). Kingston denies that when Kingston, its customers, and other third parties turn on the products accused of infringing the '589 Patent, the controller chip supplies, via an initialization circuit, a supply voltage stable signal once a supply voltage has been stabilized after the switching-on operation of the dynamic semiconductor memory device. Kingston denies that the identified controller chip also supplies, via an enable circuit of the initialization circuit, an enable signal, the initialization circuit receiving the supply voltage stable signal and further command signals externally applied to the dynamic semiconductor memory device, after an identification of a predetermined proper initialization sequence of the further command signals, the enable signal being generated and effecting an unlatching of a control circuit provided for a proper operation of the dynamic semiconductor memory device. Kingston admits that Paragraph 24 alleges that a so-called Clock Enable Signal ("CKE signal") supplied by the Phison controller chip to the Nanya chips is the purported enable signal claimed in the '589 Patent. Kingston admits that Paragraph 24 also alleges that the so-called Mode Register Set ("MRS") command and/or the ZQ Calibration ("ZQCL") command is the initialization sequence of the command

signals.  However, Kingston denies that the products accused of infringing the '589 Patent provide any initialization sequence of external commands before providing an enable signal, as required by the asserted claims of the '589 Patent.  In particular, the identified CKE signal is supplied before the MRS signal during the "Reset and Initialization Sequence at Power-on Ramping," instead of after the MRS signal as required by the asserted claims of the '589 Patent.  *See* Fig. 3, 2Gb DDR3 SDRAM H-Die datasheet, Nanya Technology ("Nanya Datasheet"), *available at* http://www.nanya.com/NanyaAdmin/GetFiles.ashx?ID=1199 (last visited May 23, 2016).  Kingston therefore denies that it infringes the '589 Patent for at least the reasons herein.  All remaining allegations of Paragraph 24 are denied.

25.  Kingston denies the allegations of Paragraph 25 of the Complaint.

26.  Paragraph 26 states legal conclusions to which no response is required. Kingston denies that it has induced or continues to induce infringement of the '589 Patent pursuant to 35 U.S.C. § 271(b).  Any remaining allegations of Paragraph 26 are denied.

27.  Paragraph 27 states legal conclusions to which no response is required. Kingston denies that it has induced or continues to induce infringement of the '589 Patent pursuant to 35 U.S.C. § 271(b).  Kingston admits that it received a letter from Polaris regarding the potential licensing of the '589 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it infringes or has induced infringement of the '589 Patent and denies that any alleged infringement was willful.  All remaining allegations of Paragraph 27 are denied.

28.  Paragraph 28 states legal conclusions to which no response is required. Kingston denies that it has contributed to or continues to contribute to infringement of the '589 Patent pursuant to 35 U.S.C. § 271(c).  Any remaining allegations of Paragraph 28 are denied.

29.  Kingston denies the allegations of Paragraph 29 of the Complaint.

30. Paragraph 30 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '589 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it infringes the '589 Patent and denies that any alleged infringement was willful. All remaining allegations of Paragraph 30 are denied.

## COUNT II:

### KINGSTON'S PURPORTED INFRINGEMENT
### OF U.S. PATENT NO. 6,438,057

31. Kingston incorporates by reference its responses to the allegations in Paragraphs 1-30 above as if fully set forth herein.

32. Paragraph 32 states legal conclusions to which no response is required. Kingston denies that it infringes the '057 Patent, literally or under the doctrine of equivalents, and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 32 are denied.

33. Kingston admits that what purports to be an image of the front and back views of Kingston's KVR16R11D4/16 product is shown in Paragraph 33. Any remaining allegations of Paragraph 33 are denied.

34. Kingston admits that what purports to be a schematic diagram of Kingston's KVR16R11D4/16 product is shown in Paragraph 34. Kingston denies that the products accused of infringing the '057 Patent support the Extended Temperature Range feature as required by the asserted claims of the '057 Patent. Kingston denies that the products accused of infringing the '057 Patent comprise at least one temperature sensor in thermal communication with a DRAM array, operable to produce a signal indicative of a temperature of the DRAM array or the equivalent, and coupled to at least one connection pin such that the signal may be provided to external circuitry. Kingston admits that the diagram of the purported KVR16R11D4/16 product appears to show an Atmel AT30TSE002B temperature sensor. Kingston

denies, however, that this AT30TSE002B temperature sensor is in thermal communication with any DRAM array, is operable to produce a signal indicative of a temperature of the DRAM array or the equivalent, or is coupled to at least one connection pin, such that the signal may be provided to external circuitry. Kingston denies that the DRAM array on the KVR16R11D4/16 product depicted in the diagram is refreshed at a rate that decreases as the temperature of the DRAM array decreases and that increases as the temperature of the DRAM array increases. Kingston therefore denies that it infringes the '057 Patent for at least the reasons herein. All remaining allegations of Paragraph 34 are denied.

35.     Kingston denies the allegations of Paragraph 35 of the Complaint.

36.     Paragraph 36 states legal conclusions to which no response is required. Kingston denies that it has induced or continues to induce infringement of the '057 Patent pursuant to 35 U.S.C. § 271(b). Any remaining allegations of Paragraph 36 are denied.

37.     Kingston denies the allegations of Paragraph 37 of the Complaint.

38.     Kingston denies the allegations of Paragraph 38 of the Complaint.

39.     Kingston denies the allegations of Paragraph 39 of the Complaint.

40.     Kingston denies the allegations of Paragraph 40 of the Complaint.

41.     Kingston denies the allegations of Paragraph 41 of the Complaint.

42.     Kingston denies the allegations of Paragraph 42 of the Complaint.

43.     Kingston denies the allegations of Paragraph 43 of the Complaint.

44.     Kingston denies the allegations of Paragraph 44 of the Complaint.

45.     Kingston denies the allegations of Paragraph 45 of the Complaint.

46.     Kingston denies the allegations of Paragraph 46 of the Complaint.

47.     Kingston denies the allegations of Paragraph 47 of the Complaint.

48.     Paragraph 48 states legal conclusions to which no response is required. Kingston denies that it has actively induced its customers or other third parties to

directly infringe the '057 Patent pursuant to 35 U.S.C. § 271(b). Any remaining allegations of Paragraph 48 are denied.

49. Kingston denies that it has actively induced its customers or other third parties to directly infringe the '057 Patent. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '057 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it infringes or has induced infringement of the '057 Patent and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 49 are denied.

50. Paragraph 50 states legal conclusions to which no response is required. Kingston denies that it has contributed to or continues to contribute to infringement of the '057 Patent pursuant to 35 U.S.C. § 271(c). Any remaining allegations of Paragraph 50 are denied.

51. Kingston denies the allegations of Paragraph 51 of the Complaint.

52. Paragraph 52 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '057 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it infringes the '057 Patent and denies that any alleged infringement was willful. All remaining allegations of Paragraph 52 are denied.

## COUNT III:

### KINGSTON'S PURPORTED INFRINGEMENT OF U.S. PATENT NO. 6,850,414

53. Kingston incorporates by reference its responses to the allegations in Paragraphs 1-52 above as if fully set forth herein.

54. Paragraph 54 states legal conclusions to which no response is required. Kingston denies that it infringes the '414 Patent, literally or under the doctrine of

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims
4301900

9

Case No. 16-cv-00300 CJC (RAO)

equivalents, and denies that any alleged infringement was willful.  Any remaining allegations of Paragraph 54 are denied.

55.    Kingston admits that what purports to be an image of the front and back views of Kingston's KVR16R11D4/16 product is shown in Paragraph 55. Any remaining allegations of Paragraph 55 are denied.

56.    Kingston admits that what purports to be a schematic diagram of Kingston's KVR16R11D4/16 product is shown in Paragraph 56. Any remaining allegations of Paragraph 56 are denied.

57.    Kingston admits that the identified KVR15R11D4/16 product has at least nine semiconductor memories that are shown in red in the diagram in Paragraph 56. Kingston admits that the memory modules in the identified KVR15R11D4/16 product are encapsulated in rectangular housing with a shorter dimension and a longer dimension.  Kingston denies, however, that "said longer dimension of said housing of each one of said semiconductor memories, other than said error correction chip" is "oriented parallel with said contact strip" as required by the asserted claims of the '414 Patent.  Kingston therefore denies that it infringes the '414 Patent for at least the reasons herein.  All remaining allegations of Paragraph 57 are denied.

58.    Kingston denies the allegations of Paragraph 58 of the Complaint.

59.    Kingston denies the allegations of Paragraph 59 of the Complaint.

60.    Paragraph 60 states legal conclusions to which no response is required. Kingston denies that it has actively induced its customers or other third parties to directly infringe the '414 Patent pursuant to 35 U.S.C. § 271(b).  Any remaining allegations of Paragraph 60 are denied.

61.    Kingston denies that it has actively induced its customers or other third parties to directly infringe the '414 Patent pursuant to 35 U.S.C. § 271(b).  Kingston admits that it received a letter from Polaris regarding the potential licensing of the '414 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it

infringes or has induced infringement of the '414 Patent and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 61 are denied.

62. Kingston denies the allegations of Paragraph 62 of the Complaint.

63. Paragraph 63 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '414 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it infringes the '414 Patent and denies that any alleged infringement was willful. All remaining allegations of Paragraph 63 are denied.

## COUNT IV:

## KINGSTON'S PURPORTED INFRINGEMENT
## OF U.S. PATENT NO. 7,206,978

64. Kingston incorporates by reference its responses to the allegations in Paragraphs 1-63 above as if fully set forth herein.

65. Paragraph 65 states legal conclusions to which no response is required. Kingston denies that it infringes the '978 Patent, literally or under the doctrine of equivalents, and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 65 are denied.

66. Kingston admits that what purports to be an image of the front and back views of Kingston's KVR21R15D4/16 product is shown in Paragraph 66. Any remaining allegations of Paragraph 66 are denied.

67. Kingston denies the allegations of Paragraph 67 of the Complaint.

68. Kingston denies that one or more the products accused of infringing the '978 Patent comprises means for providing a check signal to each of the circuit units, the structure of which is the same as or equivalent to that disclosed in the patent specification. Kingston denies that a so-called PAR (command and address parity) input on each dynamic random access memory chip in the products accused of

infringing the '978 Patent provides the so-called means for providing a check signal to each of the circuit units as claimed in the '978 Patent.  Specifically, each dynamic random access memory chip in the products accused of infringing the '978 Patent has a register (MR5) that enables or disables the command/address parity check for that chip, but the "default state of the C/A Parity bits is disabled."  *See* JESD79-4A at p. 68.  Kingston therefore denies that it infringes the '978 Patent for at least the reasons herein.  All remaining allegations in Paragraph 68 are denied.

69.     Kingston denies the allegations of Paragraph 69 of the Complaint.

70.     Kingston denies the allegations of Paragraph 70 of the Complaint.

71.     Kingston denies the allegations of Paragraph 71 of the Complaint.

72.     Kingston denies the allegations of Paragraph 72 of the Complaint.

73.     Kingston denies the allegations of Paragraph 73 of the Complaint.

74.     Paragraph 74 states legal conclusions to which no response is required. Kingston denies that it has actively induced its customers or other third parties to directly infringe the '978 Patent pursuant to 35 U.S.C. § 271(b).  Any remaining allegations of Paragraph 74 are denied.

75.     Kingston denies that it has actively induced its customers or other third parties to directly infringe the '978 Patent pursuant to 35 U.S.C. § 271(b).  Kingston admits that it received a letter from Polaris regarding the potential licensing of the '978 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it infringes or has induced infringement of the '978 Patent and denies that any alleged infringement was willful.  Any remaining allegations of Paragraph 75 are denied.

76.     Kingston denies the allegations of Paragraph 76 of the Complaint.

77.     Paragraph 77 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '978 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it

infringes the '978 Patent and denies that any alleged infringement was willful. All remaining allegations of Paragraph 77 are denied.

## COUNT V:

### KINGSTON'S PURPORTED INFRINGEMENT OF U.S. PATENT NO. 7,315,454

78. Kingston incorporates by reference its responses to the allegations in Paragraphs 1-77 above as if fully set forth herein.

79. Paragraph 79 states legal conclusions to which no response is required. Kingston denies that it infringes the '454 Patent, literally or under the doctrine of equivalents, and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 79 are denied.

80. Kingston admits that what purports to be an image of the front and back views of Kingston's KVR16R11D4/16 product is shown in Paragraph 80. Any remaining allegations of Paragraph 80 are denied.

81. Kingston admits that what purports to be a schematic diagram of Kingston's KVR16R11D4/16 product is shown in Paragraph 81. Kingston denies that the electronic printed circuit board shown in Paragraph 80 has a contact strip that extends at a first edge of the printed circuit board along with a first lateral direction and a plurality of electrical contacts disposed along the first lateral direction between two second edges that extend in a second lateral direction that is perpendicular to the first lateral direction. Kingston denies that the products accused of infringing the '454 Patent comprise a plurality of semiconductor memory chips of substantially identical type mounted on at least one external area of the printed circuit board and having a rectangular form with a shorter dimension and a longer dimension in a direction perpendicular to the shorter dimension. Kingston denies that the memory chips are arranged in at least two rows, each row extending in the first lateral direction between a center of the printed circuit board and the left or right edge, wherein the memory chips in each row are arranged in an alternating sequence of opposite orientation with

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims
4301900

13

Case No. 16-cv-00300 CJC (RAO)

the longer dimension of each memory chip being parallel with the shorter dimension of adjacent memory chips in the same row. Kingston denies that the memory chips aligned in the second lateral direction and lying in respective adjacent rows have opposite orientations. Kingston therefore denies that it infringes the '454 Patent for at least the reasons herein. All remaining allegations of Paragraph 81 are denied.

82. Kingston denies the allegations of Paragraph 82 of the Complaint.

83. Kingston denies the allegations of Paragraph 83 of the Complaint.

84. Kingston denies the allegations of Paragraph 84 of the Complaint.

85. Kingston admits that its KVR16R11D4/16 product complies with certain portions of certain JEDEC standards. Any remaining allegations of Paragraph 85 are denied.

86. Paragraph 86 states legal conclusions to which no response is required. Kingston denies that it has actively induced its customers or other third parties to directly infringe the '454 Patent pursuant to 35 U.S.C. § 271(b). Any remaining allegations of Paragraph 86 are denied.

87. Kingston denies that it has actively induced its customers or other third parties to directly infringe the '454 Patent pursuant to 35 U.S.C. § 271(b). Kingston admits that it received a letter from Polaris regarding the potential licensing of the '454 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it infringes or has induced infringement of the '454 Patent and denies that any alleged infringement was willful. Any remaining allegations of Paragraph 87 are denied.

88. Kingston denies the allegations of Paragraph 88 of the Complaint.

89. Paragraph 89 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '454 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent. Kingston denies that it

infringes the '454 Patent and denies that any alleged infringement was willful.  All remaining allegations of Paragraph 89 are denied.

## COUNT VI:

## KINGSTON'S PURPORTED INFRINGEMENT OF U.S. PATENT NO. 7,334,150

90.    Kingston incorporates by reference its responses to the allegations in Paragraphs 1-89 above as if fully set forth herein.

91.    Paragraph 91 states legal conclusions to which no response is required. Kingston denies that it infringes the '150 Patent, literally or under the doctrine of equivalents, and denies that any alleged infringement was willful.  Any remaining allegations of Paragraph 91 are denied.

92.    Kingston admits that what purports to be an image of the front and back views of Kingston's KVR13LR9D4/16 product is shown in Paragraph 92.  Any remaining allegations of Paragraph 92 are denied.

93.    Kingston denies that the products accused of infringing the '150 Patent comprise a plurality of bus signal lines operable to supply an incoming clock signal and incoming command and address signal to at least the memory chips.  Kingston denies that the products accused of infringing the '150 Patent comprise a clock signal regeneration circuit configured to generate a plurality of copies of the incoming clock signal and to supply the copies of the incoming clock signal to the memory chip, where the copies of the incoming clock signal have the same frequency as the incoming clock signal.  Kingston denies that the products accused of infringing the '150 Patent comprise a register circuit arranged on the memory module in a common chip packaging with the clock regeneration circuit.  Kingston admits that Paragraph 93 states that the identified KVR13LR9D4/16 product comprises an Inphi INSSTE32882XV-GS02 registering clock driver chip.  Kingston admits that Paragraph 93 states that the Inphi INSSTE32882XV-GS02 registering clock driver chip includes both a so-called clock regeneration circuit and a so-called register

circuit.  Kingston denies that the register circuits in the products accused of infringing the '150 Patent are configured to receive one of the copies of the incoming clock signal from the clock regeneration circuit as required by the asserted claims of the '150 Patent.  In particular, the asserted claims of the '150 Patent require that the "register circuit" in the memory register receives a clock signal copy from a "clock signal regeneration circuit."  However, in the products accused of infringing the '150 Patent, any clock signal input to the "register circuit" is not one of the clock signal copies output from a "clock signal regeneration circuit."  Kingston therefore denies that it infringes the '150 Patent for at least the reasons herein.  All remaining allegations of Paragraph 93 are denied.

94.    Kingston denies the allegations of Paragraph 94 of the Complaint.

95.    Kingston denies the allegations of Paragraph 95 of the Complaint.

96.    Kingston denies the allegations of Paragraph 96 of the Complaint.

97.    Kingston denies the allegations of Paragraph 97 of the Complaint.

98.    Kingston denies the allegations of Paragraph 98 of the Complaint.

99.    Kingston denies the allegations of Paragraph 99 of the Complaint.

100.   Kingston denies the allegations of Paragraph 100 of the Complaint.

101.   Kingston denies the allegations of Paragraph 101 of the Complaint.

102.   Paragraph 102 states legal conclusions to which no response is required.  Kingston denies that it has actively induced its customers or other third parties to directly infringe the '150 Patent pursuant to 35 U.S.C. § 271(b).  Any remaining allegations of Paragraph 102 are denied.

103.   Kingston denies that it has actively induced its customers or other third parties to directly infringe the '150 Patent pursuant to 35 U.S.C. § 271(b).  Kingston admits that it received a letter from Polaris regarding the potential licensing of the '150 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it

infringes or has induced infringement of the '150 Patent and denies that any alleged infringement was willful.  Any remaining allegations of Paragraph 103 are denied.

104.  Kingston denies the allegations of Paragraph 104 of the Complaint.

105.  Paragraph 105 states legal conclusions to which no response is required. Kingston admits that it received a letter from Polaris regarding the potential licensing of the '150 Patent on February 1, 2016, but Kingston denies that this communication constituted actual notice of infringement of this patent.  Kingston denies that it infringes the '150 Patent and denies that any alleged infringement was willful.  All remaining allegations of Paragraph 105 are denied.

## PLAINTIFF'S REQUEST FOR RELIEF

Paragraphs 106−112 set forth Polaris' statement of relief to which no response is required.

Kingston denies that Polaris is entitled to any relief whatsoever as prayed or otherwise.

Kingston denies each and every allegation of the Complaint not already admitted or denied and further denies that Polaris is entitled to any relief whatsoever from Kingston on the basis of any of the purported claims for relief contained in the Complaint.

## PLAINTIFF'S JURY DEMAND

Paragraph 113 sets forth Polaris' request for trial by jury to which no response is required.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Non-Infringement)

For at least the reasons set forth above, Kingston has not infringed and does not infringe, either literally or under the doctrine of equivalents, nor contributed to infringement by others, nor actively induced others to infringe, any purportedly valid claim of the '589, '057, '414, '978, '454, and/or '150 Patents (the "Asserted Patents").

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity)

For at least the reasons set forth below, the Asserted Patents, and each and every claim thereof, are invalid for failure to comply with one or more requirements of Title 35, United States Code, including without limitation the provisions of 35 U.S.C. §§ 101, 102, 103, 112, and 132, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

Upon information and belief, by reason of prior art and the proceedings in the U.S. Patent and Trademark Office during the prosecution of the applications that led to the issuance of the Asserted Patents, including, without limitation, amendments, representations, concessions, and admissions made by or on behalf of the applicant, Polaris is estopped from asserting that at least some of the Asserted Patents cover and include any Kingston products alleged to infringe the Asserted Patents under the doctrine of equivalents. For example, during prosecution of the application that issued as the '150 Patent, the applicant amended its claims in response to the Examiner's prior art rejections and made corresponding concessions regarding claim scope that estop Polaris from asserting that the '150 Patent covers any accused Kingston product, including under a doctrine of equivalents theory. For instance, the applicant amended its claims and argued in response to prior art rejections that the claims in the '150 Patent do not cover modifications of the frequency of the original incoming clock signal and instead only purportedly cover the generation of exact multiple copies of the incoming clock signal. This estops Polaris from alleging that Kingston infringes the '150 Patent, especially in light of the non-infringement positions provided with respect to the '150 Patent at, for example, Paragraph 93, which are incorporated herein in their entirety.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver, Laches, Estoppel, and Acquiescence)

Polaris' claims are barred, in whole or in part, by the equitable doctrines of waiver, laches, estoppel, and/or acquiescence, and/or other equitable doctrines. For example, to the extent any of the Asserted Patents are alleged by Polaris to be infringed because of compliance with any standards, such as the Joint Electron Device Engineering Council ("JEDEC") standards, Polaris and/or its predecessors-in-interest knew or reasonably should have known about the alleged infringement by the accused products and have unreasonably delayed suit against Kingston. Further, products accused of infringing the Asserted Patents have been manufactured, sold, offered for sell, or marketed by Kingston for more than six years. A presumption of laches thus arises because Polaris and/or its predecessors-in-interest knew or should have known about the accused products, but unreasonably delayed the filing of this lawsuit, and each of the Asserted Patents issued more than six years ago. Polaris' unreasonable delay in filing this lawsuit has caused material prejudice to Kingston.

## FIFTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Polaris' claims for recovery are barred, in whole or in part, by 35 U.S.C. § 287.

## SIXTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

Under the provisions of 35 U.S.C. § 286, Polaris is precluded from seeking recovery for any of Kingston's alleged infringing acts occurring more than six years before the filing of the Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

### (Action Including an Invalid Claim and Limitation on Recovery of Costs)

Polaris' prayer for costs is barred, in whole or in part, by Polaris' failure to disclaim any invalid claims under 35 U.S.C. § 288.

Kingston's First Amended Answer, Affirmative
Defenses, and Counterclaims
4301900

19

Case No. 16-cv-00300 CJC (RAO)

## EIGHTH AFFIRMATIVE DEFENSE

### (License and/or Exhaustion)

Polaris' claims are precluded, in whole or in part, to the extent any allegedly infringing products are licensed either expressly or impliedly and/or under the doctrine of patent exhaustion or first sale.  The Accused Products are licensed because, and/or any rights that Polaris had to enforce the Asserted Patents were exhausted when, Kingston's suppliers, including Samsung Electronics Co., Ltd., Nanya Technology Corp., Hynix Semiconductor, Inc., Micron Technology, Inc., Inphi Corp., and others, who, by information and belief, took a license to the Asserted Patents.

## NINTH AFFIRMATIVE DEFENSE

### (Implied License)

On information and belief, Polaris' claims for recovery are barred, in whole or in party, by the doctrine of express license and/or implied license.  Kingston has an implied license to practice the Asserted Patents through its suppliers, including Samsung Electronics Co., Ltd., Nanya Technology Corp., Hynix Semiconductor, Inc., Micron Technology, Inc., Inphi Corp., and others, who, by information and belief, are licensed to practice the Asserted Patents.

## TENTH AFFIRMATIVE DEFENSE

### (Absence of Damages)

Polaris has not suffered and will not suffer any injury or damages by way of the acts and conduct of Kingston as alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Polaris' claims are barred, in whole or in part, by the equitable doctrine of unclean hands.  Polaris knows or should have known that the Asserted Patents are exhausted, that Kingston has an implied license to practice the Asserted Patents, and that the Asserted Patents are unenforceable due to laches, but Polaris, nonetheless,

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims

20

Case No. 16-cv-00300 CJC (RAO)

4301900

served its Complaint in an abusive, unlawful, and anti-competitive manner on Kingston with knowledge that the Asserted Patents were unenforceable due to at least exhaustion, implied license, and laches. Further, to the extent any of the Asserted Patents are alleged by Polaris to be infringed because of compliance with any standards, such as Joint Electron Device Engineering Council ("JEDEC") standards, Polaris has engaged in abusive, unlawful, and anti-competitive behavior by filing its Complaint and failing to offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms.

### TWELFTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of patent misuse. For example, to the extent any of the Asserted Patents are alleged by Polaris to be infringed because of compliance with any standards, such as Joint Electron Device Engineering Council ("JEDEC") standards, Polaris has engaged in patent misuse through its abusive, unlawful, and anti-competitive behavior by filing its Complaint and failing to offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms.

### THIRTEENTH AFFIRMATIVE DEFENSE

### (Violation of RAND Commitment)

To the extent any of the asserted patents are alleged by Polaris to be infringed because of compliance with any standards, such as Joint Electron Device Engineering Council ("JEDEC") standards, Polaris does not offer licenses to the Asserted Patents on fair, reasonable, and non-discriminatory terms and therefore Polaris is not entitled to any recovery.

### OTHER AFFIRMATIVE DEFENSES

Kingston's investigation of the claims and its defenses is continuing. In addition to the affirmative defenses set forth herein, Kingston expressly reserves the right to amend its Answer to allege and assert any additional affirmative defenses and

counterclaims or to supplement its existing defenses under Rule 8 of the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

Defendant and Counter-claimant Kingston Technology Company, Inc. ("Kingston") hereby submits its Counterclaims against Plaintiff and Counterclaim Defendant Polaris Innovations Limited ("Polaris"), and upon information and belief as to the actions of all persons and entities other than Kingston, alleges as follows:

## THE PARTIES

1.     Kingston is a corporation organized and existing under the laws of Delaware with its principal place of business at 17600 Newhope Street, Fountain Valley, California 92708.  Among other things, Kingston makes and markets memory module products and is one of the world's largest memory module companies. Kingston employs more than 4,000 people worldwide.

2.     On information and belief, Polaris is a corporation organized and existing under the laws of Ireland, with its principal place of business at 29 Earlsfort Terrace, Dublin 2, Republic of Ireland.  Polaris is a wholly-owned subsidiary of WiLAN Inc. ("WiLAN").  Polaris and WiLAN are both non-practicing entities.

## JURISDICTION AND VENUE

3.     This Court has exclusive original jurisdiction over the subject matter of this action under 28 U.S.C. § 1331. This action arises under the Patent Act of 1952, 35 U.S.C. §§ 1, et seq., as amended, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.  Exclusive jurisdiction for any action arising under any Act of Congress relating to patents is conferred on U.S. District Courts pursuant to 28 U.S.C. § 1338(a).

4.     Kingston's First through Twelfth Claims for Relief are actions for declaratory relief and attorneys' fees under 28 U.S.C. § 2201 and 35 U.S.C. § 101 et seq. These counts arise under Title 35 of the U.S. Code and decisional law relating to patent infringement, validity, and enforceability.

5.    In addition, this Court has supplemental jurisdiction over Kingston's Thirteenth Claim for Relief (breach of contract) pursuant to 28 U.S.C. § 1367 because the claim is so related to claims in the action within such original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

6.    Polaris has submitted to jurisdiction in this Court.

7.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), and (d) and § 1400(b) because this suit was filed in this District by Polaris, Kingston conducts business in this District, and, on information and belief, Polaris conducts business in this District.

## **GENERAL ALLEGATIONS:**

8.    Polaris acquired more than 7,000 patents (the "Qimonda patent portfolio"), including the Asserted Patents, from Infineon Technologies AG ("Infineon") on or around June 2, 2015.  Infineon was the original owner and assignee of the Asserted Patents.

9.    Infineon has been a member of the Joint Electron Device Engineering Council ("JEDEC"), a trade association and standards-setting organization ("SSO"). On information and belief, Infineon is a member of at least JEDEC's JC-42 Solid State Memories and JC-45 DRAM Modules Committees.

10.    For more than half a century, JEDEC or its predecessors have developed open standards and publications for the microelectronics industry.  For example, to ensure that DRAM modules interoperate with the technologies with which they are paired in host devices, industry participants develop common standards for DRAM products through JEDEC.

11.    Collaboratively established industry standards possess great value. SSOs efficiently produce open standards available for all industry participants to adopt.  By ensuring that related technology products use a common architecture, SSOs facilitate the emergence of products that are more attractive to consumers, who value the

convenience of interoperability.  Standards also facilitate price- and quality-based competition, hasten product-development time, prevent companies from investing in the wrong direction, and make it unnecessary for consumers to delay buying their desired products for fear that later developments will render their chosen purchase defunct.

12.    JEDEC recognizes these advantages, observing that "JEDEC's collaborative efforts ensure product interoperability, benefiting the industry and ultimately consumers by decreasing time-to-market and reducing product development costs."

13.    When industry participants meet in a SSO to identify a standard for their next-generation products, they must choose among alternative technologies that cover many distinct components of the standard.  If it were not the case that there are frequently technical alternatives for each feature or function of a given technical standard, there would be little need for SSOs, a primary purpose of which is to facilitate that selection process among those alternatives.

14.    In this "ex ante" setting—*i.e.*, before the SSO adopts a new standard (or new version of a standard)—a patentee could negotiate with the SSO to have its claimed technology included in the proposed standard.  To persuade the SSO to adopt its technology over substitutes, a patentee would compete on the basis of price and quality.  The royalty that such a patentee could command ex ante reflects the patent's marginal value over alternative technologies, and is limited by the SSO's ability to choose a non-proprietary or non-infringing standard-that is, to "design around" the asserted patent.

15.    Once an SSO chooses a standard and industry adopts it, alternative technologies and design-around are no longer available.  At that moment, any patents reading on the adopted standard are "standard-essential patents" ("SEPs"), such that their owners possess significant market power due to "hold-up."

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims
4301900

24

Case No. 16-cv-00300 CJC (RAO)

16.    As the Ninth Circuit has observed, "[t]he catch with standards is that it may be necessary to use patented technology in order to practice them.  As a result, standards threaten to endow holders of standard-essential patents with disproportionate market power.  In theory, once a standard has gained such widespread acceptance that compliance is effectively required to compete in a particular market, anyone holding a standard-essential patent could extract unreasonably high royalties from suppliers of standard-compliant products and services.  This problem is a form of 'patent holdup.'"  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012) (citations and quotations omitted).

17.    JEDEC, like other SSOs, has therefore adopted policies designed to protect competition and prevent its members from holding-up firms that implement its chosen standards.  The JEDEC Patent Policy requires members and participants in any JEDEC committee to disclose any patents they own that are potentially essential to the standards being developed by JEDEC, and to agree to license any of its SEPs on reasonable and non-discriminatory ("RAND") or royalty-free terms.

18.    On information and belief, for consideration, including membership and participation in JEDEC, Infineon entered into an express and/or implied contract with JEDEC, and agreed to disclose patents potentially essential to the standards being developed by JEDEC and to license its SEPs on either a royalty-free basis or on RAND terms.

19.    As a member of JEDEC, Infineon thus had an obligation to disclose any patents that might be essential to the work of at least JEDEC's JC-42 and JC-45 Committees, which developed standards upon which Polaris appears to base at least some of its claims of infringement of the Asserted Patents in this case.  Infineon also had an obligation to license any of its SEPs relating to the JEDEC standards on royalty-free or RAND terms.

20.    On and information and belief, when Polaris acquired the Qimonda patent portfolio from Infineon, which included the Asserted Patents, Polaris took all of

the patents subject to these RAND and related encumbrances from Infineon.  Polaris assumed the burden of Infineon's enforceable promise to license any alleged SEPs on RAND terms.

21.    Kingston is a third-party beneficiary of these contractual promises, which run with the encumbered patents.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement

### of U.S. Patent No. 6,157,589)

22.    Kingston incorporates by reference the allegations contained in paragraphs 1 through 21 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

23.    This is an action for a declaratory judgment of non-infringement by Kingston of the '589 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

24.    Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '589 Patent.

25.    The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '589 Patent.

26.    Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '589 Patent.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement

### of U.S. Patent No. 6,438,057)

27.    Kingston incorporates by reference the allegations contained in paragraphs 1 through 26 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

28.    This is an action for a declaratory judgment of non-infringement by Kingston of the '057 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

29.     Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '057 Patent.

30.     The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '057 Patent.

31.     Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '057 Patent.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement
### of U.S. Patent No. 6,850,414)

32.     Kingston incorporates by reference the allegations contained in paragraphs 1 through 31 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

33.     This is an action for a declaratory judgment of non-infringement by Kingston of the '414 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

34.     Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '414 Patent.

35.     The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '414 Patent.

36.     Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '414 Patent.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement
### of U.S. Patent No. 7,206,978)

37.     Kingston incorporates by reference the allegations contained in paragraphs 1 through 36 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

38. This is an action for a declaratory judgment of non-infringement by Kingston of the '978 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

39. Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '978 Patent.

40. The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '978 Patent.

41. Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '978 Patent.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement

### of U.S. Patent No. 7,315,454)

42. Kingston incorporates by reference the allegations contained in paragraphs 1 through 41 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

43. This is an action for a declaratory judgment of non-infringement by Kingston of the '454 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

44. Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '454 Patent.

45. The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '454 Patent.

46. Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '454 Patent.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringement

### of U.S. Patent No. 7,334,150)

47.    Kingston incorporates by reference the allegations contained in paragraphs 1 through 46 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

48.    This is an action for a declaratory judgment of non-infringement by Kingston of the '150 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

49.    Polaris has alleged that Kingston directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '150 Patent.

50.    The filing of this action by Polaris, and Kingston's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '150 Patent.

51.    Kingston seeks a declaration under 28 U.S.C. §§ 2201, et seq. that it does not infringe any claim of the '150 Patent.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability

### of U.S. Patent No. 6,157,589)

52.    Kingston incorporates by reference the allegations contained in paragraphs 1 through 51 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

53.    Polaris purports to be the assignee and owner of the entire right, title and interest in the '589 Patent.

54.    Polaris has sued Kingston in the present action, alleging infringement of the '589 Patent.  Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '589 Patent.

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims

4301900

29

Case No. 16-cv-00300 CJC (RAO)

55. The claims of the '589 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

56. The claims of the '589 Patent are invalid, at least, as anticipated or obvious under 35 U.S.C. §§ 102 and 103, in view of, at least, the JEDEC Standard for SDRAM semiconductor memories. The JEDEC Standard discloses a method for initializing a dynamic semiconductor memory device of a random access type via an initialization circuit controlling a switching-on operation of the dynamic semiconductor memory device and of its circuit components. The JEDEC Standard discloses supplying, via an initialization circuit, a supply voltage stable signal once a supply voltage has been stabilized after the switching-on operation of the dynamic semiconductor memory device. Indeed, the '589 Patent itself recognizes that the JEDEC standard defines the recommended initialization sequence (i.e., "POWERON SEQUENCE"). *See* '589 Patent at 1:43-61. In particular, the POWERON SEQUENCE discloses: (a) the application of a supply voltage and a start pulse in order to maintain a do-nothing (NOP condition) at the inputs of the component; (b) the maintenance of a stable supply voltage of a stable clock signal, and of stable NOP input conditions for a minimum time period of 200 microseconds; (c) the preparation command for Word line activation (PRECHARGE) for all the memory banks of the device; (d) the activation of eight or more refresh commands (AUTOREFRESH); and (e) the activation of a loading configuration register command (MODE-REGISTER-SET) for initializing the mode register. The JEDEC standard thus discloses the maintenance of a "stable supply voltage of a stable clock signal" for at least 200 microseconds as well as a three-command sequence. Moreover, it would be obvious to one of skill in the art to incorporate an "enable circuit" that receives a "supply voltage stable signal," and external command signals and then transmits an enable signal to a control circuit to start the proper operation of the semiconductor device, as claimed in the '589 Patent.

57.    The claims of the '589 Patent are further invalid in view of U.S. Patent 5,757,715 (the "'715 Patent") alone or further in view of U.S. Patent No. 5,710,741 (the "'741 Patent") and/or the JEDEC SDRAM Standard.  The '715 Patent discloses a dynamic semiconductor memory device of a random access type.  3:66-4-3; *see also* '741 Patent at 2:45.    The '715 patent further discloses an initialization circuit controlling a switching-on operation and supplying a supply voltage stable signal once a supply voltage has been stabilized after the switching-on operation.  2:16-23; *see also* '741 Patent at 4:40-44, Fig. 1.    The '715 Patent discloses an enable circuit receiving the supply voltage stable signal and externally applied further command signals.  8:46-50, Fig. 6, CKE signal; *see also* '741 Patent at 4:41-50, Fig. 1.    The '715 Patent discloses that the enable circuit outputs an enable signal after a predetermined proper initialization sequence of the externally applied further command signals being identified.  8:46-50, Fig. 6; *see also* '741 Patent at 4:47-53, Fig. 1, 4:30-34.    The '715 Patent discloses that the enable signal effecting an unlatching of said control circuit.  Fig. 6; *see also* '741 Patent, Fig. 1.  The '589 Patent is further invalid in view of the combination one or more of the following: U.S. Patent No. 5,698,972, U.S. Patent No. 5,734,280, U.S. Patent No. 5,710,741, the JEDEC SRAM Standard, and applicant admitted prior art.

58.    The above listed references are exemplary.    Kingston will provide complete invalidity contentions at the appropriate time under the schedule, after Polaris provides its infringement contentions.

59.    Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '589 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

60.    Polaris served the Complaint on Kingston with knowledge that the '589 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

61. Kingston seeks a judgment declaring that the asserted claims of the '589 Patent are invalid and unenforceable.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Invalidity and Unenforceability**

**of U.S. Patent No. 6,438,057)**

62. Kingston incorporates by reference the allegations contained in paragraphs 1 through 58 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

63. Polaris purports to be the assignee and owner of the entire right, title and interest in the '057 Patent.

64. Polaris has sued Kingston in the present action, alleging infringement of the '057 Patent. Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '057 Patent.

65. The claims of the '057 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

66. The claims of the '057 Patent are invalid, at least, as obvious under 35 U.S.C. § 103, in view of, at least, the combination of U.S. Patent No. 5,532,968 (the "'968 Patent") and U.S. Patent No. 6,453,218 (the "'218 Patent").

67. The '968 Patent discloses at least one DRAM array, and at least one temperature sensor in thermal communication with the DRAM array and operable to produce a signal indicative of a temperature of the DRAM array, the signal being such that the rate at which the DRAM array is refreshed decreases as the temperature of the DRAM array decreases and the rate at which the DRAM array is refreshed increases as the temperature of the DRAM array increases. Fig. 4; 1:37-38, 1:57-67, 2:1-10, 3:60-62. The '218 Patent discloses a temperature sensor that uses a connection pin to provide a signal to external circuitry. Fig. 3; 4:27-31 ("temperature generated by the

internal temperature sensor is not stored within a register, but instead transmitted directly out of the device on the pins normally used for sending and receiving memory data."). The '057 Patent is thus obvious under 35 U.S.C. § 103 because one of skill in the art would have been motivated to combine the '968 Patent with the '218 Patent, as the disclosure of a temperature sensor that uses a connection pin to provide a signal to external circuitry was well known in the prior art.

68. The claims of the '057 Patent are further invalid in view of U.S. Patent 5,229,970 (the "'970 Patent") in view of U.S. Patent No. 6,134,136 (the "'136 Patent") and/or the JEDEC SRAM Standard. The '970 Patent discloses an apparatus comprising a semiconductor package including at least one connection pin. 2:53-54, 4:7-11, 4:20-22. The '970 Patent discloses a DRAM disposed within a package. 6:51-52, Fig. 1-4. The '136 Patent discloses a temperature sensor in thermal communication with memory. 6:51-52, 7:46-48, 21:25-27, 22:21-23. It would have been obvious to connect it to DRAM memory in view of this disclosure. The '136 Patent discloses a temperature sensor operable to produce a signal indicative of a temperature of the DRAM array. 6:46-49, 21:41-42, 22:2-7. The '136 Patent discloses a connection pin for providing signals to external circuitry. 4:52-53. The '136 Patent discloses refreshing a memory at a rate that increases and decreases based on temperature of memory. Abstract, 5:64-66, 7:41-44, 13:13-15, 14:20-24, 14:29-30, 14:53-55, 22:62-64. The '057 Patent is further invalid in view of the combination of the '136 Patent with the JEDEC SDRAM standard, the PC133 Standard, and applicant admitted prior art.

69. The above listed references are exemplary. Kingston will provide complete invalidity contentions at the appropriate time under the schedule, after Polaris provides its infringement contentions.

70. Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '057 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

71. Polaris served the Complaint on Kingston with knowledge that the '057 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

72. Kingston seeks a judgment declaring that the asserted claims of the '057 Patent are invalid and unenforceable.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability

### of U.S. Patent No. 6,850,414)

73. Kingston incorporates by reference the allegations contained in paragraphs 1 through 65 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

74. Polaris purports to be the assignee and owner of the entire right, title and interest in the '414 Patent.

75. Polaris has sued Kingston in the present action, alleging infringement of the '414 Patent. Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '414 Patent.

76. The claims of the '414 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

77. The claims of the '414 Patent are invalid, at least, under 35 U.S.C. § 101 because the claimed system implements the abstract idea of rearranging rectangular objects to more efficiently fit in a predefined space, a conventional business practice and human endeavor that is not patentable under 35 U.S.C. 101 and *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014). The implementation of rearranging rectangular objects as applied to the field of memory modules, furthermore, does not provide sufficient inventive concept to transform this abstract idea into patent-eligible subject matter because, as the '414 Patent itself admits, SIMMS, DRAMS, and other

error correction chips were all known in the prior art and arranging such chips in a space- efficient manner is a conventional business practice.

78.    The claims of the '414 Patent are also invalid, at least, as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of at least U.S. Patent No. 5,383,148 ("the "'148 Patent"). The '148 Patent, for example, discloses an electronic printed circuit board configuration having a contact strip for insertion into another electronic unit, a memory module having at least nine identically designed integrated semiconductor memories; each one of said semiconductor memories being encapsulated in a rectangular housing having a shorter dimension and a longer dimension; said housing of each one of said semiconductor memories being identically designed and being individually connected to said printed circuit board; one of said semiconductor memories being connected as an error correction chip; said longer dimension of said housing of said error correction chip being oriented perpendicular to said contact strip; and said longer dimension of said housing of each one of said semiconductor memories, other than said error correction chip, being oriented parallel with said contact strip. In particular, at least one embodiment of the '148 Patent shows a horizontal arrangement of two clusters of nine DRAMs on a SIMM chip, along with a vertically arranged error correction chip.

79.    The claims of the '414 Patent are further invalid in view of GB 2289573 ("Simpson") alone or in combination with U.S. 2002/0196612 and/or the Intel PC SDRAM Specification Rev 1.0. Simpson discloses an electronic printed circuit board having a contact strip for insertion into another electronic unit. 9:8-16, Figs. 1-3, 10:21-30, 12:10-14. Simpson discloses a memory module having at least nine identically designed integrated semiconductor memories. 9:18-20, 10:10-19, 13:7-12, Figs. 1-3. Simpson discloses that each one of said semiconductor memories are encapsulated in a rectangular housing having a shorter dimension and a longer dimension. Figs. 1-3. Simpson discloses a housing of each one of said semiconductor memories being identically designed and being individually connected to said printed

circuit board. 9:10-20, Figs. 1-3. Simpson discloses one of the memories being an error correction chip. 10:5-19, 11:10-13. Simpson discloses that the longer dimension of said housing of said error correction chip being oriented perpendicular to said contact strip. 3:9-27, 4:11-13, 6:8-9, 7:19-23, 8:5-11, 10:5-19, 11:10-13, 12:25-28, Figs. 1-3. Simpson discloses that the longer dimension of said housing of each one of said semiconductor memories, other than said error correction chip, are oriented in parallel with said contact strip. Figs. 1-3.

80. The '414 Patent is further invalid in view of the JEDEC SDRAM Standard, the PC133 Standard, and applicant admitted prior art in view of knowledge in the art and basic space utilization principals.

81. The above listed references are exemplary. Kingston will provide complete invalidity contentions at the appropriate time under the schedule, after Polaris provides its infringement contentions.

82. Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '414 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

83. Polaris served the Complaint on Kingston with knowledge that the '414 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

84. Kingston seeks a judgment declaring that the asserted claims of the '414 Patent are invalid and unenforceable.

## TENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability

### of U.S. Patent No. 7,206,978)

85. Kingston incorporates by reference the allegations contained in paragraphs 1 through 72 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

86. Polaris purports to be the assignee and owner of the entire right, title and interest in the '978 Patent.

87. Polaris has sued Kingston in the present action, alleging infringement of the '978 Patent. Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '978 Patent.

88. The claims of the '978 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

89. The claims of the '978 Patent are invalid, at least, under 35 U.S.C. § 101 because the claimed system implements the elementary abstract idea of mathematically comparing one set of numbers (1s and 0s) with another set of numbers. Such mathematical comparison, as applied to the field of memory modules, does not provide sufficient inventive concept to transform the abstract idea into patent-eligible subject matter because, for example, the '978 Patent admits that command/address parity checking was known in the prior art. *See* '978 Patent at 1:21-24 ("Conventionally, error detection and correction on the main memory bus is done on the data bus only, by including additional bits or even chips and by using special algorithms for processing data received via the data bus."); 1:25-33 ("Some prior art computer main memory systems comprise additional error detection means to detect errors on the command/address bus. In such systems, the memory controller generates a check signal which is driven to the memory modules. Each memory module comprises an error detection unit that detects an error on the command/address bus by making use of the check signal.").

90. The claims of the '978 Patent are also invalid, at least, as anticipated and/or obvious under 35 U.S.C. §§ 102 and 103 in view of at least U.S. Patent No. 5,455,939 (the "'939 Patent") and an IEEE article from October 1987, Selector-line

merged built-in ECC technique for DRAMS, IEEE Journal of Solid-State Circuits, Vol. 22 (Oct. 1978).

91.     The purported inventive idea in the '978 Patent of placing error detection chips in each DRAM would have been obvious to a person of ordinary skill at the time of the invention.  For example, the IEEE article from October 1987 discloses a "high-performance built-in error checking and correcting (ECC) technique applicable to megabit-level dynamic RAM (DRAM) chips.  This technique, based on a bidirectional parity code, achieves high-speed error correction with a minimum increase in area."  The '939 Patent, moreover, discloses a circuit module comprising a module board, a plurality of circuit units arranged on the module board, each circuit unit consisting of a single integrated circuit memory chip; a main bus having a plurality of lines, branching into a plurality of sub-buses having a plurality of lines, each of the sub-busses being connected to one of the plurality of circuit units; wherein each circuit unit comprises an indication signal generating unit for providing an indication signal based on a combination of the signals received on the plurality of lines of the sub-bus connected to the respective circuit unit, and an indication signal output for outputting the indication signal.  In particular, the '939 Patent discloses a circuit module for detecting and correcting errors in data transmitted from DRAMs using "arrays of exclusive OR (XOR) gates."  2:55.

92.     The claims of the '978 Patent are also invalid in view of U.S. Patent No. 4,335,459.  The '459 Patent discloses a circuit module having a module board and a plurality of memory chips arranged on the module. Fig. 5.  The '459 Patent discloses a main bus having a plurality of lines that branch into a plurality of sub-buses also having a plurality of lines and each connected to a memory chip. Fig. 5; 6:60-7:20.  Each of the memory chips in the '459 Patent can include hamming code circuitry that generates an indication of an error (either single bit or double bit).  Fig. 3; 4:39-61.  The indication signal is output on lines 26 or 27 of the '459 Patent.  *Id.*  Additionally, it would have been obvious to implement the error correction scheme of the '459

Patent on any one of variety of prior art memory module designs, including the JEDEC SDRAM and PC133 standards.

93.    The above listed references are exemplary.    Kingston will provide complete invalidity contentions at the appropriate time under the schedule, after Polaris provides its infringement contentions.

94.    Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '978 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

95.    Polaris served the Complaint on Kingston with knowledge that the '978 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

96.    Kingston seeks a judgment declaring that the asserted claims of the '978 Patent are invalid and unenforceable.

## ELEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability

### of U.S. Patent No. 7,315,454)

97.    Kingston incorporates by reference the allegations contained in paragraphs 1 through 79 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

98.    Polaris purports to be the assignee and owner of the entire right, title and interest in the '454 Patent.

99.    Polaris has sued Kingston in the present action, alleging infringement of the '454 Patent.  Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '454 Patent.

100.    The claims of the '454 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims

4301900

39

Case No. 16-cv-00300 CJC (RAO)

101. The claims of the '454 Patent are invalid, at least, under 35 U.S.C. § 101 because the claimed system implements the abstract idea of rearranging rectangular objects to more efficiently fit them in a predefined space, a conventional business practice and human endeavor that is not patentable under 35 U.S.C. 101 and *Alice*. The implementation of rearranging rectangular objects as applied to the field of memory modules, furthermore, does not provide sufficient inventive concept to transform this abstract idea into patent-eligible subject matter because, as the '454 Patent itself admits, SIMMS, DRAMS, and other error correction chips were all known in the prior art and arranging such chips in a space-efficient manner is a conventional business practice.

102. Moreover, the purported inventive idea in the '454 Patent of arranging memory chips in alternating orientations to maximize density would have been obvious to a person of ordinary skill at the time of the invention. For example, one of skill in the art would have known how to arrange rectangular memory chips in a pinwheel pattern, which is an ancient design pattern.

103. The claims of the '454 Patent are further invalid in view of DE 10142361 ("Kiehl") combined with the ordinary knowledge and skill in the art. Kiehl discloses a semiconductor memory module comprising a PCB, including a contact strip that extends at a first edge of the printed circuit board along a first lateral direction. *See* Fig. 1 and related text.

104. Kiehl discloses a plurality of electrical contacts disposed along the first lateral direction between two second edges that extend in a second lateral direction that is perpendicular to the first lateral direction. *See* Fig. 1 and related text. The memory chips are substantially identical type and mounted on at least one external area of the PCB (as shown). The chips have a shorter and longer dimension that are perpendicular, and have at least two rows of chips extending in a first lateral direction. The chips in respective adjacent rows are opposite orientations. Additionally, the applicant admitted prior art disclose each of the limitations set forth above as well.

105.   One or ordinary skill in the art would understand that the physical layout of the chip is a matter of design choice in the available space with a finite number of options.   As described in U.S. Patent No. 4,630,219, the choice of position of semiconductor chips on a PCB is known as the "tile fitting problem." 7:50-60.  Given the size of memory chip is fixed there are only a limited number of tiling options— one of which is where the memory chips in each row are arranged in an alternating sequence of opposite orientations with the longer dimension of each memory chip being parallel with the shorter dimension of adjacent memory chips in the same row. It would be obvious for one of ordinary skill in the art to arrange the chips in Kiehl or the applicant admitted prior art in this configuration in view of known tiling patterns.

106.   The above listed references are exemplary.  Kingston will provide complete invalidity contentions at the appropriate time under the schedule, after Polaris provides its infringement contentions.

107.   Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '454 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

108.   Polaris served the Complaint on Kingston with knowledge that the '454 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

109.    Kingston seeks a judgment declaring that the asserted claims of the '454 Patent are invalid and unenforceable.

## TWELFTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity and Unenforceability

### of U.S. Patent No. 7,334,150)

110.   Kingston incorporates by reference the allegations contained in paragraphs 1 through 86 above and paragraphs 1 through 105 of its First Amended Answer, as though set forth in full.

111.   Polaris purports to be the assignee and owner of the entire right, title and interest in the '150 Patent.

112.   Polaris has sued Kingston in the present action, alleging infringement of the '150 Patent.  Thus, an immediate, real, and justiciable controversy exists between Polaris and Kingston with respect to the alleged infringement, validity, and enforceability of the '150 Patent.

113.   The claims of the '150 Patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

114.   The claims of the '150 Patent are invalid, at least, under 35 U.S.C. § 101 because the claimed system implements the abstract idea of replicating or copying information, an ancient business practice and human endeavor that is not patentable under 35 U.S.C. 101 and *Alice.*  Moreover, the implementation of replicating/copying information, as applied to the field of memory modules, does not provide sufficient inventive concept to transform the abstract idea into patent-eligible subject matter because, as the '150 Patent admits, DRAMs, clock signals, command and address signals, and PLL and DLL circuits were all known in the art, and were conventional.

115.   The claims of the '150 Patent are invalid, at least, as obvious under 35 U.S.C. § 103, in view of at least one or more of U.S. Patent No. 6,898,726 (the "'726 Patent"); U.S. Patent Application No. 2003/0204688, titled Method And Apparatus For Selectively Transmitting Command Signal And Address Signal (the "'688 Application"); and the applicant admitted prior art.

116.   The '726 Patent discloses, for example, a memory module with multiple memory chips; bus signal lines that supply an incoming clock signal (WCLK) and incoming command and address signals (CA) to the memory chips (Fig. 4); a clock signal regeneration circuit incorporating a phase locked loop circuit (Fig. 4) that generates multiple copies of the incoming clock signal (WCLK(1-8)) and supplies the copies of the incoming clock signal to the memory chips (Fig. 4), the copies of the

incoming clock signal having a same frequency as the incoming clock signal (col. 6:51-55); and a register circuit arranged on the memory module with the clock regeneration circuit (Fig. 4; 7:35-41) and configured to receive one of the copies of the incoming clock signal from the clock regeneration circuit (Fig. 4; 7:35-41), the register circuit further temporarily storing the incoming command and address signals (Fig. 4; 7:35-41).  *See also*, *e.g*., Fig. 4 (showing serial bus structure for CA signals); 4:52-5:12 (discussing how device location on a bus affects information transmission); 3:35-40 (discussing DDR and SDR applications).

117.   The '688 Application discloses, for example, a memory module with multiple memory chips; bus signal lines that supply an incoming clock signal (Fig. 2, CLK) and incoming command and address signals (Fig. 2, COM/ADD) to the memory chips; a clock signal regeneration circuit incorporating a phase locked loop circuit (Fig. 2) that generates multiple copies of the incoming clock signal (Fig. 2, PCLK, OPCLK, [0012]) to supply the copies of the incoming clock signal to the memory chips (Fig. 2, OPCLK, [0013]), the copies of the incoming clock signal having the same frequency as the incoming clock signal ([0012]); and a register circuit arranged on the memory module with the clock regeneration circuit (Fig. 2) and configured to receive one of the copies of the incoming clock signal from the clock regeneration circuit (Fig. 2, PCLK, [0012]), the register circuit further temporarily storing the incoming command and address signals (Fig. 2).

118.   The '150 Patent discloses in the Background section of its specification, when discussing prior art memory systems, among other things, DRAMs (DDR1, DDR2, DDR3), differential clock signals, and hybrid-T and fly-by bus structures (1:20-2:20).

119.   The above listed references are exemplary.   Kingston will provide complete invalidity contentions at the appropriate time under the schedule after Polaris provides its infringement contentions.

120. Kingston also asserts this Counterclaim against Polaris for declaratory relief that the '150 Patent is unenforceable due to patent/licensing exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

121. Polaris served the Complaint on Kingston with knowledge that the '150 Patent was unenforceable due to exhaustion, estoppel, unclean hands and/or patent misuse, and laches.

122. Kingston seeks a judgment declaring that the asserted claims of the '150 Patent are invalid and unenforceable.

## THIRTEENTH CLAIM FOR RELIEF

### (Breach of Contract)

123. Kingston incorporates by reference the allegations contained in paragraphs 1 through 93 above, as though set forth in full.

124. On information and belief, JEDEC has required committee members and participants to disclose patents that are potentially essential to the standards being developed by JEDEC, and to agree to license such patents either at no charge or on RAND terms, or it "must withdraw from the committee no later than one-hundred twenty (120) calendar days" and risk having JEDEC reject the standard in favor of a design-around.

125. On information and belief, Infineon is a member of at least JEDEC's JC-42 Solid State Memories and JC-45 DRAM Modules Committees.

126. On information and belief, Infineon was under a contractual obligation to disclose any potential SEPs to at least JEDEC's JC-42 Solid State and JC-45 DRAM Modules Committees and to abide by royalty-free or RAND licensing terms with respect to any SEPs.

127. Kingston is informed and believes, and on that basis alleges, that for consideration, including membership and participation in JEDEC, Infineon entered into an express and/or implied contract with JEDEC, to which others, including Kingston, are third-party beneficiaries.

Kingston's First Amended Answer, Affirmative Defenses, and Counterclaims

44

Case No. 16-cv-00300 CJC (RAO)

4301900

128. On information and belief, Polaris took the patents it acquired from Infineon, including the Asserted Patents, subject to RAND and related encumbrances from Infineon.

129. To the extent that any of the Asserted Patents are essential to the implementation of JEDEC standards, then Polaris has breached its obligation to license such patents on RAND terms.

130. Kingston has incurred damages and irreparable harm and will be further damaged in the future due to Polaris' breach of its contractual obligations. Polaris' breach of contract has injured Kingston, subjecting it to the choice of paying substantial litigation expenses, ceasing to manufacture the accused products, or paying greater than RAND royalties. Such damages include, without limitation: lost profits and lost opportunities; a reduction in output; the ongoing threat of having to pay unreasonable royalties; the costs of having to defend this lawsuit; and the threat of other lawsuits that may be brought by Polaris with regard to other SEPs it owns.

## **PRAYER FOR RELIEF**

WHEREFORE, Kingston denies that Polaris is entitled to any relief, including the relief requested in its Prayer for Relief, Kingston respectfully requests that the Court enter a judgment against Polaris and in favor of Kingston as follows:

A. That Polaris takes nothing and be denied any relief whatsoever;

B. That the Complaint be dismissed on the merits and with prejudice;

C. That the claims of the Asserted Patents be declared to be not infringed by Kingston;

D. That the claims of the Asserted Patents be declared to be invalid and/or unenforceable;

E. Awarding Kingston damages sufficient to compensate it for the injuries it has sustained on account of Polaris' breach of contract;

F. Compelling Polaris to offer licenses to the Asserted Patents on RAND terms;

G.     That Kingston be awarded its costs incurred in connection with this action;

H.     That this case be deemed exceptional pursuant to 35 U.S.C. § 285, such that Kingston be awarded reasonable attorneys' fees; and

I.      That Kingston be awarded such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Kingston demands a trial by jury as to all claims, counterclaims, third-party claims and issues properly triable thereby.

Dated: May 23, 2016                                    Vinson & Elkins L.L.P.


                                                       By:  _____*/s/ Christopher Kao*_____
                                                             Christopher Kao

                                                       Attorneys for Defendant
                                                       Kingston Technology Company, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 23, 2016, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system.  The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means.  Further, the undersigned certifies that a copy of the foregoing document was served upon opposing counsel of record by e-mail, according to an agreement among the parties that e-mail service is sufficient.

Dated: May 23, 2016

By: */s/ Christopher Kao*
Christopher Kao