Christopher Kao (SBN 237716)
ckao@velaw.com
Brock S. Weber (SBN 261383)
bweber@velaw.com
Vinson & Elkins L.L.P.
555 Mission Street, Suite 2000
San Francisco, CA 94105
Tel: 415.979.6900
Fax: 415.651.8786

Christine Yang (SBN 102048)
cyang@sjclawpc.com
Law Office of S.J. Christine Yang
17220 Newhope Street, Suite 101-102
Fountain Valley, CA 92708
Tel.: 714.641.4022
Fax: 714.641.2082

*Attorneys for Defendant*
*Kingston Technology Company, Inc.*

**FILED UNDER SEAL PURSUANT TO 03/07/17 COURT ORDER [DKT. 171]**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLARIS INNOVATIONS LIMITED,

Plaintiff,

vs.

KINGSTON TECHNOLOGY COMPANY, INC.,

Defendant.

---

KINGSTON TECHNOLOGY COMPANY, INC.,

Counterclaimant,

vs.

POLARIS INNOVATIONS LIMITED,

Counter-Defendants.

---

SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG SEMICONDUCTOR, INC.,

Third-Party Defendants.

Case No. 8:16-cv-00300-CJC-RAO

**COUNTERCLAIM-PLAINTIFF KINGSTON TECHNOLOGY COMPANY, INC.'S OPPOSITION TO SAMSUNG'S MOTION TO DISMISS**

Date: April 3, 2017
Time: 1:30 p.m.
Courtroom: 9B
Judge: Honorable Cormac J. Carney

## TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 3

- I. KINGSTON'S COUNTERCLAIMS MORE THAN MEET *TWOMBLY*'S PLEADING REQUIREMENTS. ..... 3
  - A. Rule 12(b)(6) and *Twombly* Require Only the Allegation of Facts Sufficient to Give Rise to Plausibility. ..... 3
  - B. Kingston's Well-Pleaded Counterclaims Allege Ample Facts in Satisfaction of the Plausibility Standard. ..... 5
    - 1. Abundant Facts Give Rise to a Plausible Conspiracy Under Sections 1 and 2 (Counts 14, 16, and 18). ..... 7
    - 2. All Elements Of Kingston's Section 2 Conspiracy Monopolization, and Attempted Monopolization Claims Are Sufficiently Alleged (Counts 15-18). ..... 9
- II. THE *NOERR-PENNINGTON* DOCTRINE DOES NOT BAR KINGSTON'S CLAIMS. ..... 11
  - A. *Noerr-Pennington* Immunity Does Not Apply to Lawsuits in Furtherance of Monopolistic Schemes ..... 13
  - B. Samsung and Polaris's Breach of FRAND Promise is Not Immune. ..... 15
  - C. Kingston Properly Alleges "Sham" Litigation. ..... 15
- III. KINGSTON HAS SUFFICIENTLY ALLEGED ANTITRUST INJURY ..... 17
- IV. KINGSTON HAS PROPERLY PLEADED A REFUSAL TO DEAL. ..... 20
- V. KINGSTON'S CLAIMS ARE NOT BARRED BY ANY STATUTES OF LIMITATIONS. ..... 22
- VI. KINGSTON STATES A CLAIM UNDER CLAYTON ACT § 7 ..... 22

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Cases**

*Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........ 17

*Am. Bd. of Internal Med. v. Mittman*,
No. SACV08-929AG (MLGx), 2009 WL 12931710 (C.D. Cal. May 4, 2009) ........ 4

*Apple, Inc. v. Samsung Elecs. Corp.*,
No. 11-cv-01846-LHK, 2012 WL 2571719 (N.D. Cal. June 30, 2012) ........ 15, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ........ 11, 21

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ........ 19

*Aventis Pharma S.A. v. Amphastar Pharm., Inc.*,
No. 5:03-00887-MRP (PLA), 2009 WL 8727693
(C.D. Cal. Feb. 17, 2009) ........ 4, 11, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 1, 3, 8, 9

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
620 F.2d 1360 (9th Cir. 1980) ........ 4, 10

*Blank v. Kirwan*,
39 Cal. 3d 311 (1985) ........ 3

*Broadcom Corp. v. Qualcomm, Inc.*,
501 F.3d 297 (3rd Cir. 2007) ........ 15

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ........ 19

*Catch Curve Inc. v. Venali, Inc.*,
519. F. Supp. 2d 1028 (C.D. Cal. 2007) ........ 19

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 (9th Cir. 1982) ........ 13, 14

*Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.*,
217 F.3d 1187 (9th Cir. 2000) ........ 23

*Columbia v. Omni Outdoor Adver., Inc.*,
499 US 365 (1991) ........................................................................................16

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
370 U.S. 690 (1962) ..................................................................................4, 11

*Cost Mgmt. Servs. v. Wash. Natural Gas Co.*,
99 F.3d 937 (9th Cir. 1996)...........................................................................4, 10

*Costco Wholesale Corp. v. Maleng*,
522 F.3d 874 (9th Cir 2008).............................................................................1, 4

*E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ............................................................................12, 15, 17

*Eastman Kodak v. Image Tech. Servs.*,
504 U.S. 451 (1992) ........................................................................................21

*Esco Corp. v. United States*,
340 F.2d 1000 (9th Cir. 1965)............................................................................7

*Forro Precision, Inc. v. Int'l Bus. Machines Corp.*,
673 F.2d 1045 (9th Cir. 1982)..........................................................................10

*Forsyth v. Humana, Inc.*,
114 F.3d 1467 (9th Cir. 1997)..........................................................................17

*Freeman v. San Diego Ass'n of Realtors*,
322 F.3d 1133 (9th Cir. 2003)..........................................................................17

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) ..............................................................23

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
343 F.3d 1000 (9th Cir. 2003), *opinion amended on denial of reh'g*,
352 F.3d 367 (9th Cir. 2003)............................................................................17

*Hanover Shoe, Inc. v. United Show Machinery Corp.*,
392 U.S. 481 (1968) ........................................................................................22

*Helicopter Trans. Servs., Inc. v. Erickson Air-Crane Inc.*,
No. CV 06-3077-PA, 2008 U.S. Dist. LEXIS 3466 (D. Or. Jan. 14, 2008)...............21

*Hennegan v. Pacifico Creative Serv., Inc.*,
787 F.2d 1299 (9th Cir. 1986)..........................................................................22

*Hynix Semiconductor Corp. v. Rambus, Inc.*,
527 F. Supp. 2d 1084 (N.D. Cal. 2007) .......................................................13, 14

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014)....................4, 9

*In re Mushroom Direct Purchaser Antitrust Litig.*,
2016 U.S. Dist. LEXIS 177839 (E.D. Pa. Dec. 13, 2016)........................................24

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
99 F. Supp. 3d 610 (D. Md. 2015)............................................................................19

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)........................................................................1, 4, 7, 9

*Kmiec v. Powerwave Technologies, Inc.*,
No. SACV 12-00222-CJC (JPRx), 2013 WL 10106769
(C.D. Cal. Oct. 23, 2013)..........................................................................................3, 4

*Kobe, Inc. v. Dempsey Pump Co.*,
198 F.2d 416 (10th Cir. 1952)..................................................................................14

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
801 F.3d 1150 (9th Cir. 2015)..................................................................................20

*Mayle v. Felix*,
545 U.S. 644 (2005)..................................................................................................14

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (1983)................................................................................................14

*McTamney v. Stolt Tankers & Terminals (Holdings) S.A.*,
678 F. Supp. 118 (E.D. Pa. 1987..............................................................................24

*Microsoft Corp. v. Motorola, Inc.*,
795 F.3d 1024 (9th Cir. 2015)..................................................................................20

*Microsoft Mobile, Inc. v. Interdigital, Inc.*,
No. 15-723-RGA , 2016 WL 1464545 (D. Del. Apr. 13, 2016).............13, 15, 18, 19

*Nelson v. Pacific Sw. Airlines*,
399 F. Supp. 1025 (S.D. Cal. 1975)..........................................................................24

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998)...................................................................12, 16, 17

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
156 F. Supp. 3d 1094 (C.D. Cal. 2015)....................................................................10

*Pace Indus., Inc. v. Three Phx. Co.*,
813 F.2d 234 (9th Cir. 1987)....................................................................................22

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) .......... 9, 10

*Powertech Tech., Inc. v. Tessera, Inc.*,
872 F. Supp. 2d 924 (N.D. Cal. 2012) .......... 20

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) .......... 15, 16, 17

*RealPage, Inc. v. Yardi Sys., Inc.*,
852 F. Supp. 2d 1215 (C.D. Cal. 2012) .......... 3, 4, 7

*Research in Motion, Ltd. v. Motorola, Inc.*,
644 F. Supp. 2d 788 (N.D. Tex. 2008) .......... 19

*Rickards v. Canine Eye Registration Found., Inc.*,
704 F.2d 1449 (9th Cir. 1983) .......... 10

*Safeway Inc. v. Abbott Labs.*,
No. C 07-05470 CW, 2010 WL 147988 (N.D. Cal. Jan. 12, 2010) .......... 21

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) .......... 22

*SCM Corp. v. Xerox Corp.*,
645 F.2d 1195 (2d Cir. 1981) .......... 23

*Solar City Corp. v. Salt River Project Agricultural Improvement & Power Dist.*,
No. CV-15-00374-PHX-DLR, 2015 U.S. Dist. LEXIS 146904
(D. Ariz. Oct. 27, 2015) .......... 21

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) .......... 11

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
687 F. Supp. 832 (S.D.N.Y. 1988) .......... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 4, 11

*TransWeb, LLC v. 3M Innovative Properties Co.*,
812 F.3d 1295 (Fed. Cir. 2016) .......... 13, 14

*Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*,
512 F.2d 1264 (9th Cir. 1975) .......... 22

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) .......... 14

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) ........ 21

*United States v. E.I. du Pont de Nemours & Co.*,
353 U.S. 586 (1957) ........ 25

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*¸
540 U.S. 398 (2004) ........ 20, 21

*Vizio, Inc. v. Funai Elec. Co., Ltd.*,
No. CV 09-0174, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ........ 23

*Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015) ........ 10

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
511 F. Supp. 2d 372 (S.D.N.Y. 2007) ........ 19

*Zenith Elecs., LLC v. Sceptre, Inc.*,
No. CV14-05150 JAK (AJWx), 2015 U.S. Dist. LEXIS 33661
(C.D. Cal. Feb. 5, 2015) ........ 13, 15, 19

**Statutes**

15 U.S.C. §18 ........ 23

**Other Authorities**

3 Areeda & Turner, Antitrust Law 78 (1978) ........ 11

*Antitrust Guidelines for the Licensing of Intellectual Property*,
2016 WL 437330, (Aug. 12, 2016) ........ 23

Ilene Knable Gotts & Scott Sher, *The Particular Antitrust Concerns with Patent Acquisitions*, 8 No. 2 Competition L. Int'l 19 (Aug. 2012) ........ 23

Philip E. Areeda & Herbert Hovenkamp, Antitrust Law § 707 (2005) ........ 23

Defendant and Counterclaim-Plaintiff Kingston Technology Company, Inc. ("Kingston") respectfully submits this brief in opposition to Third-Party Defendants Samsung Electronics Co., Ltd. and Samsung Semiconductor, Inc.'s (together, "Samsung") Motion to Dismiss the Amended Counterclaims (Dkt. No. 164, "Mot.").

## INTRODUCTION

Kingston's Counterclaims allege in detail a pervasive anticompetitive scheme by Samsung—acting both alone and as part of a conspiracy with Polaris—to exclude its rivals from both the DRAM Chip and DRAM Module markets. This scheme involves multiple examples of exclusionary conduct, such as Samsung refusing to sell Kingston any DRAM Chips, and Samsung and Polaris surreptitiously conspiring to acquire exhausted and invalid patents and to unlawfully assert those patents against Samsung's competitors, all with the intended effect of reducing competition and harming consumers. (Second Amended Answer, Affirmative Defenses and Counterclaims ("SAAC") Dkt. Nos. 124 (redacted), 125 (sealed)).

The reality is that there is nothing Samsung can say to defeat Kingston's claims under the Sherman Act, the Clayton Act, and California state law at the pleadings stage. So instead of meeting the allegations head-on, Samsung attacks each claim around the margins, taking each of Kingston's allegations in isolation and trying to explain them away separately. This is not proper under the applicable law. *See, e.g.*, *Costco Wholesale Corp. v. Maleng*, 522 F.3d 874, 886 (9th Cir 2008) (allegations of conspiracy must be taken "as a whole"). Taken properly as a whole, the SAAC amply pleads a pattern of anticompetitive and exclusionary conduct by Samsung, and alleges facts that are more than sufficient to exclude the possibility of Samsung acting legally in seeking to exclude Kingston, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to give Samsung a clear "idea of where to begin" investigating. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). As the SAAC establishes, Samsung has every incentive to try to weaken its maverick competitor and former customer Kingston, and its unilateral actions and conspiratorial conduct with Polaris make no economic sense

but for the opportunity to target its rivals in the DRAM Chip and DRAM Module markets. (*See* Section I, *infra*.)

In addition, Samsung's Motion simply repeats arguments already presented to the Court months ago when Plaintiff Polaris Innovations Ltd. ("Polaris") opposed Kingston's Motion for Leave to File Amended Counterclaims and Add Third Party Defendants ("Motion to Amend")—arguments that the Court rejected. (*See* Order Granting Defendant's Motion for Leave to File Amended Counterclaims and Add Third Party Defendants (Dec. 14, 2016), Dkt. No. 113.) Indeed, Samsung spends much of its Motion discussing allegations in the Counterclaims regarding *Polaris*. In many places, Samsung seems to be trying to stand in the shoes of Polaris as if Samsung and Polaris were interchangeable with one another in the SAAC. But they are not.

For example, just as Polaris did in opposing Kington's Motion to Amend, Samsung seeks to invoke the *Noerr-Pennington* doctrine to defeat Kingston's claims. (*See* Section II, *infra*.) Samsung, however, seeks simply to piggyback on Polaris' claim of *Noerr-Pennington* immunity, as *Polaris*, (and not Samsung) is the party that filed the underlying infringement suit against Kingston. As discussed below, *Noerr-Pennington* is inapplicable to Samsung. Kingston's Counterclaims are not solely about Polaris' litigation against Kingston. Rather, they allege that the anticompetitive attempt to enforce invalid and exhausted patents in breach of FRAND obligations is one action in furtherance of a larger anticompetitive scheme perpetrated by Samsung, both alone and in agreement with Polaris. In any event, even if Samsung could stand entirely in Polaris' shoes, Kingston's Counterclaims allege sufficient facts to show that Polaris' lawsuit is a "sham," and thus unprotected.

Samsung's other arguments—including regarding antitrust injury, the statute of limitations, and the purported failure to plead a claim under Section 7 of the Clayton Act—are similarly unavailing, as explained below. (*See* Sections III-VI, *infra*.) The Court should therefore deny Samsung's Motion.

## ARGUMENT

### I. KINGSTON'S COUNTERCLAIMS MORE THAN MEET *TWOMBLY*'S PLEADING REQUIREMENTS.

Samsung's principal argument in support of its Motion to Dismiss is that Kingston's antitrust counterclaims are insufficient to satisfy Rule 12's pleading requirements. In particular, Samsung asserts that Kingston's conspiracy claims under Sections 1 and 2 (Counterclaims 14, 16, 18, and 20-21 (state law), brought against Samsung and Polaris), and its claims for monopolization and attempted monopolization (Counterclaims 15 and 17, brought against Samsung alone) are inadequately pleaded. Examining each in turn, it is evident that Kingston's allegations easily withstand Rule 12 scrutiny.[1]

#### A. Rule 12(b)(6) and *Twombly* Require Only the Allegation of Facts Sufficient to Give Rise to Plausibility.

It is well-established that in considering a motion to dismiss for failure to state a claim, a court is limited to considering material within the pleadings and must construe "all factual allegations set forth in the complaint … as true and … in the light most favorable to the plaintiff." *RealPage, Inc. v. Yardi Sys., Inc.*, 852 F. Supp. 2d 1215, 1221 (C.D. Cal. 2012) (internal quotations omitted); *see also Kmiec v. Powerwave Technologies, Inc.*, No. SACV 12-00222-CJC (JPRx), 2013 WL 10106769, at *2 (C.D. Cal. Oct. 23, 2013) ("[T]he court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.") A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted), meaning "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Specific

[1] Samsung does not address Kingston's state antitrust law allegations separately. Mot. at 2 n.2. Kingston's state law allegations suffice for the same reasons as its Sherman Act claims. *See Blank v. Kirwan*, 39 Cal. 3d 311, 320 (1985) (noting similarity of Sherman and Cartwright Acts).

facts are not necessary so long as the allegations give fair notice of the claim and the "grounds upon which the claim rests." *RealPage*, 852 F. Supp. 2d at 1221; *see also Kendall*, 518 F.3d at 1048 (characterizing the requirement as "giv[ing] a defendant seeking to respond to allegations of a conspiracy an idea of where to begin.").

Where the allegations plausibly show "that the pleader is entitled to relief," a complaint cannot be dismissed for failure to state a claim. *Am. Bd. of Internal Med. v. Mittman*, No. SACV08-929AG (MLGx), 2009 WL 12931710, at *1 (C.D. Cal. May 4, 2009) (internal quotation omitted). An antitrust complaint "need only allege sufficient facts from which the court can discern the elements of an injury from an act forbidden by the antitrust laws." *Id.* (citing *Cost Mgmt. Servs. v. Wash. Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996)).

Throughout its Motion, Samsung improperly dismembers and omits Kingston's allegations, arguing that when considered selectively and piecemeal they are insufficient to allege a plausible conspiracy. But the plausibility of Kingston's antitrust counterclaims should be assessed by viewing the allegations, taken as true, in their totality, and not segmented from one another. The "character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Costco*, 522 F.3d at 886 (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)). When considering a motion to dismiss, the court must read the complaint as a whole. *See, e.g.*, *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980) (collecting cases); *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, No. 5:03-00887-MRP (PLA), 2009 WL 8727693, at *4 (C.D. Cal. Feb. 17, 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *11 (N.D. Cal. Jan. 21, 2014) ("Particular details in the pleading must be construed as parts of a whole…."); *see also Kmiec*, 2013 WL 10106769, at *2 (same).

### B. Kingston's Well-Pleaded Counterclaims Allege Ample Facts in Satisfaction of the Plausibility Standard.

Beyond putting Samsung on notice as to the details of the allegations, Kingston's antitrust counterclaims plead facts that, taken as true (as they must be at this stage), show a pervasive pattern of anticompetitive and exclusionary conduct by Samsung, alone and in concert with Polaris.

Indeed, the allegations exceed even the plausibility level, detailing conduct that would certainly warrant relief:

- Since approximately 2008, Samsung—a monopolist—has unlawfully and discriminatorily refused and continues to refuse to sell DRAM Chips to Kingston (breaking a prior course of dealing), and has not provided a reason for its refusal (SAAC ¶¶ 2, 24, 25, 103, 123, 235);
- In 2015, Samsung and Polaris entered into an agreement (which they admit) to acquire the Qimonda Portfolio (the "Samsung-Polaris Agreement")—which contains many patents that purportedly cover various features of DRAM functionality (*id*. at ¶¶ 27-31, 33, 37, 65, 97, 99-101, 106- 109)—from Infineon for a purchase price of approximately €33 million, after Infineon acquired the portfolio for €125 million (*id*. at ¶¶ 11, 26, 28, 53, 97, 100, 101);
- When it was acquired by Polaris and Samsung in 2015, the Qimonda Portfolio was subject to numerous encumbrances, including licenses to hundreds of other manufacturers of DRAM Chips, and others in the DRAM industry (*id*. at ¶¶ 99, 109, 118, 121, 123);
- Indeed, before the acquisition, Samsung itself already had a royalty-free license to the Qimonda Portfolio from Qimonda's predecessors (*id*. at ¶¶ 30, 37, 121);
- When it acquired rights to the Qimonda Portfolio, Polaris also granted Samsung a royalty-free license to the Qimonda Portfolio—a license that was completely unnecessary for Samsung, given that Samsung already had a license to these patents (*id*. at ¶¶ 28, 30, 37, 100, 101, 121);

- Per Section 2.6 of the Samsung-Polaris Agreement, Samsung has a right to select certain patents from the Qimonda Portfolio to assert against third parties mutually agreed by Samsung and Polaris, with the possibility that Polaris will receive "remuneration" from Samsung for litigation filed at Samsung's behest (*id*. at ¶ 120);
- After working with Samsung to obtain the Qimonda Portfolio, Polaris took action to discriminatorily enforce the patents against Samsung's competitor Kingston by seeking royalties from Kingston, even though Kingston has never before been required to obtain such a license (*id*. at ¶¶116 – 128);
- Per the agreement, Polaris must pay Samsung five percent of any royalties it manages to extract from Kingston and other targets pursued for patent enforcement (*id*. at ¶¶ 29, 37, 106, 124), but Samsung can recover only up to the amount that Samsung originally provided to finance the acquisition. <u>In other words, Samsung can—at best—only break even on its economically-irrational subsidy</u> (*id*. at ¶¶ 29, 37, 106, 107, 124);
- Like Samsung, the companies from which Kingston buys DRAM Chips for assembly into Kingston-branded DRAM Modules already have licenses to the patents Polaris now seeks to enforce against Kingston (*id*. at ¶¶ 31, 99, 118);
- Samsung and Polaris both are bound by commitments to license patents essential to JEDEC standards on fair, reasonable and non-discriminatory terms (*id*. at ¶¶ 2, 31–32, 62–65, 109, 114, 115); and
- Samsung and Polaris are seeking discriminatory royalties in violation of their respective FRAND commitments and the royalty free license to Samsung, all related to patents that are valueless (*id*. at ¶¶ 33, 107, 108).

Despite all of these specific allegations above, Samsung argues that when taken alone a few allegations are insufficient and therefore Kingston's allegations as a whole must be insufficient. (*See* Mot. at 11.) This assertion is plainly without merit. Indeed, the details alleged provide Samsung and Polaris ample notice regarding

Kingston's claims and the grounds upon which the claims rest. *See RealPage*, 852 F. Supp. 2d at 1221. To require more specificity than what Kingston already has pleaded would be to impose a standard well beyond that required by controlling precedent.

**1. Abundant Facts Give Rise to a Plausible Conspiracy Under Sections 1 and 2 (Counts 14, 16, and 18).**

For example, Samsung argues in its Motion (at 13-14) that Kingston's allegations fail to plead an agreement between Samsung and Polaris, and that Kingston therefore cannot satisfy the first of three elements to establish a Section 1 claim: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade…; (3) which actually injures competition." *See Kendall*, 518 F.3d at 1047 (articulating the elements to state a claim under Section 1 of the Sherman Act) (emphasis added).

But this simply repeats Polaris' unsuccessful—and non-sensical—argument in opposing Kingston's Motion to Amend that no agreement between Samsung and Polaris exists. Samsung admits, as it must, that it entered into a written agreement with Polaris to acquire the Qimondo Portfolio, and the agreement, among other things, permitted Samsung to select certain patents and third-party targets for litigation. That alone establishes an agreement between the parties.

Samsung's repeat of Polaris' argument that Samsung did not provide the written notice purportedly necessary to invoke Section 2.6 of the PLA is similarly misguided. For one, it depends on unsupported facts asserted by Samsung outside of the pleadings, which is improper. But it is in any case irrelevant, as a written agreement is not necessary to establish an antitrust conspiracy.[2] *See Esco Corp. v. United States*, 340 F.2d 1000, 1008 (9th Cir. 1965) ("It is not necessary to find an express agreement, either oral or written, [for] a conspiracy.") (emphasis added).

---

[2] Of course, Polaris and Samsung may have conspired and agreed in many others ways (orally, in e-mail communications, etc.) to target Kingston, even absent a written invocation of Section 2.6. Kingston is entitled to pursue discovery on its claims regardless whether a formal writing under the contract exists.

Indeed, Samsung cites no authority for its assertion that the Samsung-Polaris agreement itself cannot be considered evidence of an agreement or conspiracy under the antitrust laws. (Mot. at 13). Samsung essentially argues that an agreement that unambiguously says that Samsung and Polaris may cooperate in launching infringement litigation provides *no insight whatsoever* into whether they actually did so. Taken together with the other facts alleged, the licensing agreement is tangible evidence that Samsung and Polaris indeed entered into an anticompetitive agreement. (*See* SAAC ¶¶ 24, 25 (Samsung's refusal to deal); 34–38, 117–19 (Samsung's attempt to extract discriminatory royalties from Kingston); 125, 135 (Samsung's violation of its JEDEC commitments to license on FRAND terms)).

Samsung also posits that one party—Polaris—had a rational reason to acquire the patent portfolio and use it to extract discriminatory royalties from Kingston and, thus, the written Samsung-Polaris Agreement cannot be evidence of a conspiracy. But Samsung is silent with respect to its own reasons for agreeing with Polaris to acquire the Qimonda Portfolio. As Kingston's allegations show, there was no economically rational reason for Samsung to participate in the agreement with Polaris, but for the value of acquiring control over the litigation of patents that can be asserted against Kingston and other rivals. (*See, e.g.*, SAAC ¶ 29, 30, 107, 121, 123.) Samsung spent approximately €16 million to assist Polaris in acquiring the Qimonda Portfolio and retain the right to direct litigation based on patents within the Qimonda Portfolio, but can never even hope to recover more than the amount that it invested in the first place, hardly an economically beneficial deal. Although Samsung purported to obtain a license to the Qimonda Portfolio as part of the agreement, Samsung never had any need for this license, as it already had a license to the Qimonda Portfolio, which existed long before the Qimonda Portfolio was offered for sale. Samsung's conduct defies innocent explanation and raises an inference of conspiracy. *See Twombly*, 550 U.S. at 554 (noting actions that tend to "exclude the possibility of independent action.").

Kingston "need not allege every link in the chain to survive the pleading stage.

The *Twombly* plausibility standard . . . [does] not force a plaintiff to limn the entirety of the conspiracy . . . to survive a motion to dismiss." *In re Lithium Ion Batteries*, 2014 WL 309192, at *11. Kingston has more than met its burden under *Twombly*'s plausibility standard and has pleaded facts sufficient to at least infer, if not show via direct evidence, an anticompetitive agreement between Polaris and Samsung. Indeed, even a cursory reading of *Kendall v. Visa U.S.A.*, 518 F.3d at 1047, which Samsung cites in its Motion (at 13–14), shows that Kingston's Counterclaims easily pass muster here. Emphasizing that a Section 1 claim requires "enough factual matter (taken as true) to suggest an agreement was made," *Kendall* explains that the plausibility requirement for pleading an antitrust conspiracy "simply calls for enough facts to raise a reasonable expectation that discovery will reveal the evidence of illegal agreement." 518 F.3d at 1047 (internal quotation omitted). Kingston meets this bar here.

### 2. All Elements of Kingston's Section 2 Conspiracy Monopolization, and Attempted Monopolization Claims Are Sufficiently Alleged (Counts 15-18).

Samsung's arguments against Kingston's Section 2 claims for conspiracy to monopolize and attempt to monopolize also fail. Pleading a conspiracy to monopolize claim under Section 2 requires four elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

The sufficiency of Kingston's conspiracy allegations are discussed above and need not be repeated. Samsung's only argument regarding the "overt act" is to claim that filing a patent suit cannot be an overt act in support of a conspiracy. (Mot. at 16). As discussed already, however, Kingston's Counterclaims are not simply based on the allegation that Polaris filed this patent litigation against Kingston. Rather, Kingston has alleged numerous acts that satisfy the overt act requirement beyond the filing of this lawsuit. For example, and to name just a few, the counterclaims plead that Samsung provided approximately €16 million to make possible the acquisition of the

Qimonda patent portfolio and that Polaris, pursuant to and in furtherance of its agreement with Samsung, in fact acquired the Qimonda patent portfolio from Infineon in 2015. SAAC ¶¶ 28, 53, 101, 106. Samsung also contracted for the right to direct and consult with Polaris on the target of the unlawful and discriminatory patent litigation, *id.* at ¶ 120, and has engaged in an ongoing refusal to sell DRAM Chips to Kingston in a bid to drive it from the DRAM Module market, *id.* at ¶ 235. Samsung fails to explain how any of these acts—or any of the others that Kingston pleads—are not overt acts in furtherance of the conspiracy. It is well-established that co-conspirators are jointly liable for overt acts of their co-conspirators. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) ("Antitrust conspirators are liable for the acts of their co-conspirators."); *Beltz Travel Serv.*, 620 F.2d at 1366-67 (same). Thus, an overt act in furtherance of the conspiracy by either Samsung or Polaris satisfies this element. The overt act requirement is therefore plainly met.

Kingston's Counterclaims also more than adequately plead facts sufficient to state an attempt to monopolize claim under Section 2,[3] which are: "(1) a specific intent to monopolize a relevant market – i.e., an intent to control prices or destroy competition in a relevant market; (2) predatory or anticompetitive conduct designed to control prices or destroy competition; [and] (3) a dangerous probability… of achieving monopoly power in the relevant market." *Paladin Assocs*, 328 F.3d at 1158; *accord Novation Ventures, LLC v. J.G. Wentworth Co.*, LLC, 156 F. Supp. 3d 1094, 1103 (C.D. Cal. 2015) (citing *Cost Mgmt. Servs.*, 99 F.3d at 949–50).

"Specific intent . . . is . . . usually proved by inference from anticompetitive conduct." *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1059 (9th Cir. 1982); *accord Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1455 (9th Cir. 1983). Here, Kingston's Counterclaims allege Samsung's monopoly power in the DRAM Chip and DRAM Module markets, (SAAC ¶¶ 10, 15, 18, 71, 81,

---

[3] The attempt to monopolize claim is brought against Samsung alone.

244, 263), and Samsung's Motion does not dispute those allegations. As above, Kingston has alleged multiple anticompetitive acts by a monopolist that make no sense except to further enhance Samsung's monopoly power, including targeting Kingston—a maverick competitor—in an attempt to control prices. (*See, e.g.*, SAAC ¶¶ 24, 25, 34–38, 117–19, 125, 135). A jury could easily infer that these facts are not accidental or motivated solely by competitive zeal. *See also Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 & n.32 (1985) (defining "exclusionary conduct" as that which "(1) tends to impair the opportunities of rivals, but also (2) either does not further competition on the merits or does so in an unnecessarily restrictive way." (quoting 3 Areeda & Turner, Antitrust Law 78 (1978))); *see also Spectrum Sports*, 506 U.S. at 459.[4] Kingston's allegations regarding the remaining elements of its Section 2 claims are therefore more than sufficient.

## II. THE *NOERR-PENNINGTON* DOCTRINE DOES NOT BAR KINGSTON'S CLAIMS.

Samsung further argues in its Motion that the *Noerr-Pennington* doctrine bars Kingston's counterclaims against Samsung.[5] (Mot. at 3.) Just as with Polaris' assertion of the *Noerr-Pennington* doctrine in opposition to Kingston's Motion to Amend on essentially identical facts, Samsung is wrong.

---

[4] Samsung apparently does not challenge the "dangerous probability" prong, for which allegations of actual monopolization are also sufficient. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455, 459 (1993). The antitrust injury requirement is discussed separately below. *See* Section III, *infra*.

[5] When litigated at the motion to dismiss stage, disputes regarding *Noerr-Pennington* are subject to the familiar standard that "a court must accept as true all allegations of material fact in the complaint and read the complaint in the light most favorable to the nonmoving party." *See, e.g., Aventis Pharma*, 2009 WL 8727693, at *4, *9 (applying pleading standard in *Noerr-Pennington* dispute in 12(b)(6) motion). Plaintiffs are entitled to "the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l Ore Co.*, 370 U.S. at 699; *see also Tellabs*, 551 U.S. at 310 ("The inquiry is whether *all* of the facts alleged, taken collectively" meet the relevant standard).

The *Noerr-Pennington* doctrine is designed to protect "solicitation of governmental action" from attack under the antitrust laws. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961). It is not a blanket license to conspire to restrain competition so long as one involves the government.[6]

As an initial matter, it should be noted that Samsung's *Noerr-Pennington* argument is based entirely on *Polaris'* underlying lawsuit against Kingston, not any conduct of Samsung's to solicit government action. As the Court is aware, Polaris raised this very same *Noerr-Pennington* argument when it tried to block Kingston's amendment to add the antitrust counterclaims. (*See* Dkt. 103, at 11.) Samsung presents no reason here why it would be entitled to immunity when Polaris is not. Samsung's attempt to resurrect the same argument here is futile, as it is illogical that Samsung could take advantage of the immunity that eluded Polaris.[7]

Samsung has not brought litigation against Kingston or petitioned the government for anything. Samsung claims that it has engaged in "litigation-related" conduct (Mot. at 4), yet it declines to elaborate except to admit that it funded Polaris' acquisition of the Qimonda Portfolio. (*Id*. at 4-5.) Accordingly, any immunity Samsung would have derives solely from Polaris' actions, its alleged co-conspirator. Samsung has provided no case in which activities ancillary to litigation were immune when the underlying suit was not, and Kingston is unaware of any such case.

Even setting this all aside, Samsung's *Noerr-Pennington* arguments simply have no merit. First, as set forth below, *Noerr-Pennington* does not immunize Samsung's wide-ranging anti-competitive conduct alleged by Kingston in its

---

[6] For example, as Samsung cannot dispute, the doctrine does not permit "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (citing *Noerr Motor Freight*, 365 U.S. at 144).

[7] Kingston's arguments in its reply brief in support of its motion for leave to amend, Dkt. 111, with respect to Polaris' *Noerr-Pennington* arguments apply with equal force to Samsung's arguments. Kingston will not repeat those arguments here, but incorporates them, and the cases they cite, by reference. *Id.* at 12–15.

Counterclaims, or even Polaris' lawsuit itself, when conducted in furtherance of the broader scheme. Second, the law is also clear that *Noerr-Pennington* does not immunize lawsuits brought in violation of FRAND commitments. Third, Kingston has adequately alleged that the lawsuit is baseless and a sham in any event. As such, Samsung's *Noerr-Pennington* argument should be rejected.

### A. *Noerr-Pennington* Immunity Does Not Apply to Lawsuits in Furtherance of Monopolistic Schemes

As an initial matter, the Federal Circuit has recently noted that "lawsuits in furtherance of a broader anticompetitive scheme" can be actionable and are not protected by *Noerr-Pennington*. *See TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1312 (Fed. Cir. 2016) (favorably citing multiple circuits concluding that *Noerr* does not apply in "anticompetitive scheme" cases);[8] *see also Microsoft Mobile, Inc. v. Interdigital, Inc.*, No. 15-723-RGA , 2016 WL 1464545, slip op. at *3 (D. Del. Apr. 13, 2016) (noting Federal Circuit's view, and denying *Noerr-Pennington* argument as to antitrust counterclaims); *Zenith Elecs., LLC v. Sceptre, Inc.*, No. CV14-05150 JAK (AJWx), 2015 U.S. Dist. LEXIS 33661, at *18 n.2, *24, *26 (C.D. Cal. Feb. 5, 2015) (no immunity for co-conspirators on antitrust and breach of contract counterclaims); *Hynix Semiconductor Corp. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007) (same). "To conclude otherwise would be contrary to the purpose of the antitrust laws." *TransWeb*, 812 F.3d at 1311-12.

As such, a defendant "may incur antitrust liability for even the good faith prosecution of a valid patent where it is shown that the infringement suit 'was brought in furtherance and as an integral part of a plan to violate the antitrust laws.'" *Rambus*, 527 F. Supp. 2d at 1096 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1264 (9th Cir. 1982)). "[W]here the patent litigation is

---

[8] When a purported *Noerr-Pennington* claim stems from "prosecuting and enforcing a patent, Supreme Court and Federal Circuit law governs" the claim of *Noerr-Pennington*. *Aventis Pharma*, 2009 WL 8727693, at *7 (citing precedent).

used to further the harm caused under a 'more traditional antitrust theory,'" the suit is not barred by *Noerr-Pennington*. *Rambus*, 527 F. Supp. 2d at 1097.

Kingston alleges precisely such a scheme, one which includes multiple counts, including ones to which Polaris—the entity that actually filed the legal action for which Samsung seeks derivative immunity— is not even a party. For example, Kingston alleges that Samsung—which holds monopoly power in the relevant markets—stopped selling, and has continued to refuse to sell, DRAM Chips to Kingston despite a prior course of dealing in an attempt to consolidate its monopolistic position and has conspired with Polaris on an anticompetitive acquisition. (*See, e.g.*, SAAC, ¶¶ 2, 20-24, 31-32, 125, 268-75.)

Thus, although Samsung attempts to mischaracterize Kingston's allegations to make it appear that Polaris' lawsuit is the only unlawful conduct of which it is accused, that is false. Even if Polaris' suit were immunized—which it is not—such immunity could not extend to protect conduct not predicated on the filing of the lawsuit. *See Clipper Exxpress*, 690 F.2d at 1263 ("W]e hold that when there is a conspiracy prohibited by the antitrust laws, and the otherwise legal litigation is nothing but an act in furtherance of that conspiracy, general antitrust principles apply, notwithstanding the existence of *Noerr* immunity.") (overruled in part on other grounds by *Mayle v. Felix*, 545 U.S. 644, 657 (2005)); *see also Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952) (patent infringement action not immune when part of monopolistic scheme) (cited in *TransWeb*, 812 F.3d at 1311). In other words, even if Polaris had been immune under *Noerr-Pennington*, this immunity could not shield Samsung's liability for claims beyond the litigation.[9]

As discussed in detail above, Kingston alleges a broad anticompetitive scheme that also includes Samsung's unlawful acquisition of the Qimonda Portfolio, as well

[9] Further, the anticompetitive lawsuit could still be admissible evidence as to those other claims. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1159-60 (1983); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965).

as using Polaris to extract discriminatory royalties on valueless patents (to which Samsung had free licenses) from Kingston and Samsung's other competitors, all in an attempt to drive up competitors' costs and force them from the market. (*See* SAAC ¶¶ 103-105, 225, 255.) Given these allegations, *Noerr-Pennington* does not apply.

**B. Samsung and Polaris's Breach of FRAND Promise is Not Immune.**

In any event, it is also well-established that *Noerr-Pennington* does not immunize from antitrust claims the launch of patent litigation in breach of a FRAND obligation. *See, e.g., Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 308, 315 (3rd Cir. 2007) (discussing *Noerr-Pennington* and allowing antitrust claim to proceed); *Microsoft Mobile*, 2016 WL 1464545, slip op. at *3 (allowing antitrust counterclaims to proceed in face of a *Noerr-Pennington* defense); *Zenith Elecs.*, 2015 U.S. Dist. LEXIS 33661, at *18 n.2 (*Noerr-Pennington* did not bar antitrust and breach of contract counterclaims to patent litigation); *Apple, Inc. v. Samsung Elecs. Corp.*, No. 11-cv-01846-LHK, 2012 WL 2571719, at *27 (N.D. Cal. June 30, 2012) (antitrust damages for cost of defending patent infringement suit recoverable). Kingston has pleaded such a violation of a FRAND obligation, including against Samsung. (*See, e.g.*, SAAC ¶¶ 129-139, 220-229, 242-248.) Thus, for this independent reason the litigation—not to mention Samsung's other conduct—is not immune.

**C. Kingston Properly Alleges "Sham" Litigation.**

Finally, Kingston's allegations, taken as true, are also sufficient to overcome *Noerr-Pennington* on sham litigation grounds. (*See, e.g.*, SAAC ¶¶ 24-39, 103-139); *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (objective baselessness plus "attempt to interfere *directly* with the business relationships of a competitor through . . . governmental *process*—as opposed to the *outcome* of that process[.]") (citing *Noerr Motor Freight*, 365 U.S at 144) (internal citations omitted) (emphasis in original).

Suits like Polaris' are what the sham exception is designed to prevent. *See*

*Prof'l Real Estate Investors*, 508 U.S. at 59-60 (citing *Columbia v. Omni Outdoor Adver., Inc.*, 499 US 365, 381 (1991)). *Noerr-Pennington* does not apply when the litigation itself is instituted to interfere with the defendant's business relationships. Kingston pleaded numerous facts, including specific terms of Samsung's conspiratorial agreement with Polaris, the context of that agreement, the exhaustion and invalidity of the patents in Polaris' suit, and the knowing breach of FRAND obligations by Samsung and Polaris. (*See* SAAC ¶¶ 24-39, 116-128.) In response, Samsung (as Polaris did) attempts to re-contextualize these allegations and insert its own facts into the discussion. But that does not change the fact that Kingston plausibly alleges the goal was to discriminatorily seek to extract anticompetitive royalties (for exhausted and invalid patents) from Samsung's competitors to raise those rivals' cost and allow Samsung to increase or maintain its monopoly in the DRAM Chip and DRAM Module markets. (SAAC ¶¶ 30, 37, 138).

As acknowledged by Samsung, Kingston alleges (1) the patents are exhausted and (2) that a FRAND rate for the patents is infinitesimal, if not zero, in any event, and both Polaris and Samsung are aware of that fact. (SAAC ¶¶ 2, 123-24). In other words, taking Kingston's pleaded facts as true, Polaris cannot objectively believe that it is entitled to any recovery whatsoever from its suit. Launching costly infringement litigation to collect no money and be ordered to issue a free license makes no economic or legal sense: in other words, without a claim to damages, no objectively reasonable litigant would have launched the litigation. As Kingston further alleges, Samsung's recovery from the patent acquisition it funded for Polaris is tied directly to the litigation and Samsung is also well aware that a reasonable royalty is zero, and thus it cannot reasonably expect a financially successful litigation outcome. *See Nobelpharma AB*, 141 F.3d at 1071 (adopting test of objective baselessness and subjective motivation). Therefore, the only reasonable interpretation of Samsung's conduct—as alleged by Kingston—was to use Polaris' litigation itself to harass and exclude Kingston while concealing Samsung's involvement. *See Prof'l Real Estate*

*Investors*, 508 U.S. at 60-61 (noting "use [of] the governmental process – as opposed to the outcome of that process – as an anticompetitive weapon.") (citing *Noerr Motor Freight*, 365 U.S at 144) (internal citations omitted) (emphasis in original).

Therefore, taken as a whole, Samsung—just like Polaris—has failed to show that Kingston's counterclaims are immune from challenge under *Noerr-Pennington*.

## III. KINGSTON HAS SUFFICIENTLY ALLEGED ANTITRUST INJURY

Samsung also recycles Polaris' unsuccessful argument that Kingston has not suffered antitrust injury.[10] Kingston must plausibly allege only: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055. Ninth Circuit law applies to this element. *See Nobelpharma AB*, 141 F.3d at 1068 (regional circuit law applies on this point).

Samsung, like Polaris did, tries to use its own interpretation of Kingston's allegations to argue that Kingston did not suffer antitrust injury. First, it argues that its conspiracy and monopolistic scheme to "raise [Kingston's] costs" "flow[s] from a patent owner seeking a royalty for the practice of intellectual property."[11] (Mot. at 19-

[10] To the extent Samsung argues that Kingston has not pleaded that it is a "participant in the same market as the alleged malefactors," this is incorrect. *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) (citation omitted). Kingston is a competitor of Samsung (SAAC ¶ 132) and under Polaris' and Samsung's own theory, it is a potential purchaser of a patent license from Polaris. The Ninth Circuit recognizes that companies in a wide variety of relationships are proper plaintiffs. *Am. Ad Mgmt. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 & n. 8 (9th Cir. 1999) (citing precedent); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477 (9th Cir. 1997); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1154 (9th Cir. 2003).

[11] Samsung asserts that it cannot "be pulled into this controversy" because it "did not acquire any upstream inputs." First, Kingston alleges that Samsung's DRAM Chips are an upstream input of the DRAM Modules made by companies like Kingston. (SAAC ¶ 75). Second, Kingston alleges that Samsung conspired to bring baseless litigation that is predicated on the premise that Polaris' patents are used in Kingston's products—in other words, that the patents are upstream components of Kingston's products. Further, as discussed elsewhere, Samsung is jointly and severally liable for injuries caused by the acquisition by its co-conspirator, Polaris.

20.) This attempt to re-cast Kingston's allegations is not permissible. *See Microsoft Mobile*, 2016 WL 1464545, at *3 (noting in analogous case that the "assertion that [the] complaint is predicate[d] . . . on an allegation that [counterclaim-defendant] seeks to enforce its patents . . . via lawsuits . . . is innacurate" and listing additional allegations, including threat of supra-competitive licensing rates and raised costs harmful to counterclaim-plaintiff) (internal quotations and citations omitted).

Kingston actually alleges that its injuries flow from an overarching scheme that includes: (1) a conspiracy to acquire invalid patents and then assert them in a sham lawsuit that seeks supra-FRAND royalties (Samsung, given its royalty-free license to the same patents, cannot seriously dispute FRAND is zero); (2) the breach of a FRAND promise—for which it also seeks damages under a breach of contract theory; (3) monopolization and related claims in multiple markets, allegations which include the patent litigation as well as a refusal to deal. (*See, e.g.*, SAAC ¶¶ 24-39, 103-139.)

Indeed, Kingston alleges that prices for DRAM Chips have *already* increased since Samsung began its course of illegal conduct and *cites publicly-available descriptions of the increased prices*. (*See* SAAC ¶ 71, 72 & n.3.) Samsung's statement that Kingston "has not plead any facts to show that the alleged harm reduces market output or raises market prices" therefore rings hollow. (Mot. at 21). The same is true for Samsung's contentions that "Kingston does not give any basis for why the Patent Action will result in a non-FRAND royalty."[12] Kingston alleges that a non-discriminatory rate is zero because zero is the rate Samsung pays. (SAAC ¶¶ 123-24). Therefore, any other rate would be discriminatory and thus non-FRAND, and

[12] Samsung argues that there is no "causal connection" between Polaris and Samsung's conduct and a non-FRAND royalty rate. (Mot. at 20 n.15). It is difficult to see how a lawsuit that Kingston alleges was filed to extract discriminatory royalties lacks a plausible "causal connection" to the extraction of discriminatory royalties. Further, without its agreement with Samsung, Polaris would not even have patents on which to sue. What Polaris would have done in a speculative alternate universe that is "independent of an agreement with Samsung" is irrelevant.

Kingston would be entitled to recover the excess royalties as damages.[13]

The threat of having to pay supra-FRAND royalties as a result of a patent infringement lawsuit is a sufficient allegation of antitrust injury. *See, e.g.*, *Research in Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793-794, 796-97 (N.D. Tex. 2008) (attempts to collect non-FRAND royalties not permitted when patents encumbered by FRAND promises and choice of paying inflated royalties or paying to defend patent litigation a "Catch-22."); *Zenith Elecs.*, 2015 U.S. Dist. LEXIS 33661, at *18 (antitrust injuries properly alleged included that defendants sought "supra-competitive royalties."); *Microsoft Mobile*, 2016 WL 1464545, at *3 ("threat [of being] forced to capitulate to … supra-competitive licensing demands.") (citation omitted); *see also Catch Curve Inc. v. Venali, Inc.*, 519. F. Supp. 2d 1028, 1035-36 (C.D. Cal. 2007) (allegations of antitrust injury based on the litigation activity properly alleged); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 99 F. Supp. 3d 610, 628-629 (D. Md. 2015) (same allegation at different stage).

Furthermore, the Counterclaims allege that Kingston has and continues to suffer antitrust injury through the costs of defending Polaris' baseless suit. (*See, e.g.*, SAAC ¶¶ 121, 135, 138.) That the cost of defending against infringement suits constitutes antitrust injury is well-established. *See, e.g.*, *Apple, Inc.*, 2012 WL 2571719 at *27-28 ("[L]itigation expenses may establish damages for an antitrust claim."); *Zenith Elecs.*, 2015 U.S. Dist. LEXIS 33661, at *17 (same); *Research in Motion*, 644 F. Supp. 2d at

---

[13] This supra-FRAND royalty is in addition to the raised costs (and therefore raised consumer prices) already imposed by Samsung's refusal to deal. On that point, Samsung says there is no injury because "Kingston has remained in the DRAM Module market for over eight years despite this supposedly anticompetitive act." (Mot. at 21) (emphasis omitted). There is no requirement that a competitor wait to be completely excluded from a market in order to properly allege antitrust standing and injury. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529 (1983) (a violation "may be unlawful even though it does not entirely exclude its victims from the market"); *Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 381 (S.D.N.Y. 2007) ("[counter-claimant] need not wait to make this claim until it is 'actually driven from the market'") (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 n.14 (1977)).

793-794, 796-97; *see also Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015) (same recovery under contract law); *Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (same).[14]

Thus, Kingston has sufficiently alleged antitrust injury as to all its claims.

## IV. KINGSTON HAS PROPERLY PLEADED A REFUSAL TO DEAL.

Samsung further argues that Kingston's allegations do not fit within the Supreme Court's refusal-to-deal jurisprudence because Kingston "does not allege that Samsung's prior dealings with Kingston were profitable nor that Samsung changed course" to extract a higher, monopolistic price. Mot. at 23. On both points, Samsung is wrong. As to the former point, Samsung's own authorities state that "[t]he unilateral termination of a voluntary (<u>and thus presumably profitable</u>) course of dealing suggest[s] a willingness to forsake short-term profits to achieve an anticompetitive end." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*¸ 540 U.S. 398, 409-10 (2004) (emphasis in original). Kingston has alleged that it and Samsung had an extensive and voluntary course of dealing,[15] (SAAC ¶ 24) and

---

[14] Samsung argues that *Magnetar Techs. Corp. v. Intamin, Ltd.*, bars recovery of Kingston's costs in defending Polaris' suit. First, *Magnetar* does not apply when, as alleged here, "the patent lawsuit [is] a sham." 801 F.3d 1150, 1160 (9th Cir. 2015). Second, it is unclear at best whether the discussion in *Magnetar* applies where the lawsuit is part of a scheme, rather than standing alone or in violation of a FRAND promise. Further, the case *Magnetar* cites, *Rickards v. Canine Eye Registration Foundation*, actually deals with the Ninth Circuit's *Noerr-Pennington* precedent. *Id.* As discussed above, the Federal Circuit's *Noerr-Pennington* jurisprudence applies here. Finally, the Ninth Circuit ruled within months of *Magnetar* that litigation costs for the defense of patent litigation brought in breach of FRAND obligations were recoverable under a contract theory similar to the one alleged by Kingston. *Microsoft Corp.*, 795 F.3d at 1047, 1052. Kingston is aware of no decision construing *Magnetar* in a manner that would bar recovery of the costs of defending Polaris' patent litigation as antitrust damages. The Ninth Circuit's detailed analysis permitting recovery in *Motorola* and the multiple prior analyses of litigation-cost damages as antitrust injury by district courts should not be nullified by a single sentence that neither mentions nor overrules them.

[15] Samsung does not—and cannot—contend that its prior sales to Kingston were not voluntary. Kingston's allegations are like *Aspen Skiing*, not *Trinko*, where the antitrust defendant "would [not] ever have [sold to the antitrust plaintiff] absent statutory compulsion." *Trinko*, 540 U.S. at 409. Nor is a course of dealing even required, even

thus under *Trinko* it was presumably profitable and Kingston's allegation suffices.

Contrary to Samsung's assertions, Kingston has also properly alleged that the "future monopoly retail price would be higher." Kingston alleges, for example, that prices have increased significantly since Samsung—a monopolist—commenced its anticompetitive activity (SAAC ¶ 71-72) and that "[b]y refusing to sell DRAM Chips to Kingston, Samsung hoped to eliminate … Kingston ... to raise DRAM chip and DRAM Module prices." (*Id*. at ¶ 24.) Whether this conduct has destroyed Kingston or only materially damaged it (and the interests of Samsung's DRAM module competitors, OEMs, and ultimately consumers, *see, e.g.*, *id*. at ¶ 6, 9) is irrelevant.

Even as described by *Trinko*, all that must be proven for an *Aspen Skiing* claim is an anticompetitive refusal to deal by a monopolist with the intended purpose and effect of creating or maintaining a monopoly. *See Trinko*, 540 U.S. at 409; *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985) ("In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right . . . [of] discretion as to parties with whom [to] deal.) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451, 483-86 (1992) (describing fact-intensive examination making business justification inappropriate for resolution even at summary judgment); *Safeway Inc. v. Abbott Labs.*, No. C 07-05470 CW, 2010 WL 147988, at *6–7 (N.D. Cal. Jan. 12, 2010) ("Taken together, *Aspen Skiing* and *[Trinko]* demonstrate that liability under Section 2 can arise when a defendant voluntarily alters a course of dealing and 'anticompetitive malice' motivates defendant's conduct.").

Thus, taken as a whole, Kingston's allegations are sufficient at the motion to dismiss stage. *See Solar City Corp. v. Salt River Project Agricultural Improvement &*

---

post-*Trinko*. *See Helicopter Trans. Servs., Inc. v. Erickson Air-Crane Inc.*, No. CV 06-3077-PA, 2008 U.S. Dist. LEXIS 3466, at *27-29 (D. Or. Jan. 14, 2008) (noting that course of dealing was "merely one of several facts in *Aspen Skiing* that supported a finding that the refusal to deal was intended to exclude competition.").

*Power Dist.*, No. CV-15-00374-PHX-DLR, 2015 U.S. Dist. LEXIS 146904, at *36 (D. Ariz. Oct. 27, 2015) (plaintiff in *Aspen Skiing* claim "plausibly alleged that (1) the District has monopoly power, (2) it made a decision to change the market, (3) this decision was motivated by a desire to restrict competition, and (4) the decision has the effect of limiting competition.").

## V. KINGSTON'S CLAIMS ARE NOT BARRED BY ANY STATUTES OF LIMITATIONS.

Samsung's arguments regarding the statute of limitations with respect to its refusal to deal are also unavailing. (*See* Mot. at 23.) Kingston does not merely allege that Samsung refused to sell to Kingston once in 2008. Rather, Kingston's Counterclaims clearly allege that Samsung continues its refusals to this day. (*See* SAAC ¶ 235 ("Samsung has refused *and refuses to sell* DRAM Chips to rival Kingston . . . ." (emphasis added))). Samsung's refusals to deal thus are continuing violations with recent acts well within the limitations period. *See Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1203 (9th Cir. 2014) (acts are "sufficient . . . so long as the defendant had the ability not to take the challenged action.").[16]

## VI. KINGSTON STATES A CLAIM UNDER CLAYTON ACT § 7.

Finally, Samsung incorrectly argues that Kingston's claim under Section 7 of

---

[16] Further, the refusals to deal are part of a larger scheme, which has many other recent actions, such as the filing of Polaris' patent suit. This allegation also suffices. *Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("[W]here the alleged antitrust violation is the attempted enforcement of an illegal contract through judicial process, the initiation of judicial proceedings is the last overt act for purposes of the statute of limitations."); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986). "A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured." *Pace Indus.*, 813 F.2d at 237(dismissal affirmed as claims filed *more* than four years after filing of patent case); *see also Hanover Shoe, Inc. v. United Show Machinery Corp.*, 392 U.S. 481, 502 & n.15 (1968). "[E]ach overt act that is part of the violation and that injures the plaintiff … starts the statutory period running again[.]"; *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 512 F.2d 1264, 1270 (9th Cir. 1975) (continuing violation over multiple decades). Therefore Kingston's counterclaims are equally timely as to all claims, based on continuing antitrust violations. *See Pace Indus.*, 813 F.2d at 239.

the Clayton Act 15 U.S.C. §18, fails because Samsung says it did not acquire the Qimonda Portfolio, and the acquisition of valid patents cannot be an antitrust violation. (Mot. at 24.) Neither assertion is correct.

Section 7 prohibits acquisitions "the effect of such acquisition may be to substantially lessen competition, or to tend to create a monopoly." 15 U.S.C. §18. Section 7 applies to acquisitions of assets or portions of assets, including patents.[17] *See Antitrust Guidelines for the Licensing of Intellectual Property*, 2016 WL 437330, at *4 (Aug. 12, 2016) ("An acquisition of intellectual property may lessen competition in a relevant antitrust market."); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1210 (2d Cir. 1981) (because "[a] patent is . . . an asset, there seems little reason to exempt patent acquisitions from scrutiny under [Section 7 of the Clayton Act]."); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 844 (S.D.N.Y. 1988); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 853 (N.D. Cal. 2004) ("Section 7… has been construed to include, among other things, patents[.]"); *see also* Philip E. Areeda & Herbert Hovenkamp, Antitrust Law § 707 (2005) ("a patent is a productive asset, and acquisition of any productive asset can raise issues under § 7 of the Clayton Act … even when the licensee is not a monopolist.").[18] Thus, contrary to Samsung's argument, acquisition of a valid patent can be an antitrust violation.

[17] Neither case Samsung offers to claim otherwise is on point. *Columbia River People's Util. Dist. v. Portland Gen. Elec. Co.*, concerns the *theft* of a patent, not a consensual and conspiratorial acquisition under Section 7. *See* 217 F.3d 1187, 1190 (9th Cir. 2000). And *Vizio, Inc. v. Funai Elec. Co., Ltd.*, No. CV 09-0174, 2010 WL 7762624, at *4 (C.D. Cal. Feb. 3, 2010) by its own terms (1) applies only to valid patents and (2) concerns a firm *without* market power making an acquisition that did not "create or cause" an increase in market power. Kingston has alleged that the patents-in-suit are invalid (SAAC ¶¶ 170-211) and it alleges that Samsung already has market power and is using the patents to enhance it. *(See, e.g.*, SAAC ¶¶ 235, 244.)

[18] Potential problems proliferate when, as here, a patent is transferred from a practicing to a non-practicing entity. *See, e.g.*, Ilene Knable Gotts & Scott Sher, *The Particular Antitrust Concerns with Patent Acquisitions*, 8 No. 2 Competition L. Int'l 19, at *21 (Aug. 2012) ( "[A] 'patent troll'… may have a stronger incentive to extract monopoly rents . . . because it is not susceptible to counterclaims for infringement.").

Likewise, a party does not need to own an asset to be subject to Section 7: "If the plaintiff is able to demonstrate that [the Clayton Act defendant] achieved significant control over the decision-making processes or the property" at issue, "then the agreement could constitute an acquisition for Section 7 purposes." *Nelson v. Pacific Sw. Airlines*, 399 F. Supp. 1025, 1029 (S.D. Cal. 1975) (noting that "plaintiff should have the opportunity to determine through discovery the extent of control."); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2016 U.S. Dist. LEXIS 177839 (E.D. Pa. Dec. 13, 2016) (quoting *Nelson* and observing that "indirect" acquisitions are subject to Section 7); *McTamney v. Stolt Tankers & Terminals (Holdings) S.A.*, 678 F. Supp. 118, 121 (E.D. Pa. 1987) ("The economic control analysis set forth in *Nelson v. Pacific Southwest Airlines* is realistic and sensible. Also, it is consistent with the . . . Clayton Act's purposes and applicability"). The SAAC satisfies this test. It alleges that Samsung: (1) funded a portion of Polaris' asset purchase; (2) retained an interest in royalties from those assets; and (3) directed the assertion of the assets through an agreement related to that acquisition that "provides Samsung with the express option to influence or control the litigation of certain patents in the Qimonda Portfolio." (SAAC ¶¶ 28-30, 37) ("But for Samsung acquiring an interest in patents…").

Kingston alleges that Samsung used its control over the patent portfolio to target Kingston, its competitor in a relevant market, with anticompetitive litigation in furtherance of a conspiratorial, monopolistic scheme. (*See, e.g.*, SAAC ¶ 37.) It is therefore simply wrong to say that Kingston "does not articulate a causal connection" between the acquisition and an "increase in Samsung's market power." Far from only having a nonexclusive license to use the patents it and Polaris acquired together (as was already the case before the acquisition), Samsung now controls those allegedly essential patents in a market in which it and Kingston compete and Samsung is a monopolist. Thus, the acquisition itself bolstered Samsung's market power, even prior to the launch of the patent litigation against Kingston, by allowing Samsung and Polaris to attempt to extract royalties from Samsung's competitors. The acquisition

fundamentally changed the market even absent any actual litigation as the mere threat of litigation may be enough for some competitors to eschew the "maverick" behavior of Kingston that caused it to be sued. (*See* SAAC ¶¶ 9, 127.)[19]

**CONCLUSION**

For the foregoing reasons, among others, Defendant Kingston respectfully requests that this Court deny the Motion. In the event that the Court agrees and denies the Motion, Kingston has prepared a proposed amended case schedule for the Court's consideration, attached as Exhibit A. An extension to the schedule will be necessary due to the delay in discovery on Kingston's antitrust claims caused first by Polaris's opposition to Kingston's Motion to Amend, and now by Samsung's Motion to Dismiss. Given these delays, the existing schedule is simply not workable. For example, the hearing on the Motion is scheduled for April 3, 2017, less than a month before the deadline for opening expert reports. The parties need time to engage in proper discovery on Kingston's antitrust claims. Thus, if the Court denies the Motion, an extension to the Court's Scheduling Order (Dkt. No. 71) will be necessary.

Dated: March 6, 2017

Vinson & Elkins L.L.P.

By: */s/ Christopher Kao*
Christopher Kao

Attorneys for Defendant
*Kingston Technology Company, Inc.*

---

[19] The acquisition is also independently relevant as evidence of the larger anticompetitive scheme, and the legality of an acquisition under Section 7 can be determined at "any time when the acquisition threatens to ripen into a prohibited effect." *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 597 (1957).

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 6, 2017, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Case Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means. Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

Dated: March 6, 2017

By: *<u>/s/ Christopher Kao</u>*
Christopher Kao

## Exhibit A
## Proposal for Amended Case Schedule

| Event | Original Schedule | Proposed Schedule |
|---|---|---|
| Samsung's Motion to Dismiss | | 2/17/2017* |
| Kingston's Opposition | | 3/6/2017* |
| Samsung's Reply | | 3/13/2017* |
| Hearing on Motion to Dismiss | | 4/3/2017* |
| Opening Expert Reports | 5/2/2017 | 9/8/2017 |
| Rebuttal Expert Reports | 6/2/2017 | 10/6/2017 |
| Completion of All Discovery and Hearing Deadline for Discovery Motions | 6/29/2017* | 11/17/2017 |
| Deadline to Conduct Settlement Proceedings | 8/8/2017* | 1/19/2018 |
| Hearing Deadline for All Other Motions | 8/28/2017* | 2/5/2018 |
| Final Pretrial Conference | 10/2/2017* | 3/5/2018 |
| Jury Trial | 10/17/2017* | 3/13/2018 |

* Indicates dates ordered by the Court. Expert report dates are as agreed by the parties to facilitate the orderly conduct of the case.